### CEPERO v. PAN AMERICAN AIRWAYS, Inc.

No. 4591.

United States Court of Appeals First Circuit.

April 7, 1952.

Rehearing Denied April 16, 1952.

Francisco Cepero, pro se.

Jose L. Novas, San Juan, P. R. (Charles R. Hartzell and Rafael O. Fernandez, San Juan, P. R., on brief), for appellee.

Before MAGRUDER, Chief Judge, and MARIS and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal by one of numerous plaintiffs from a final judgment dismissing a complaint brought to recover wages allegedly due under a collective bargaining agreement entered into between the Transport Workers Union of America, C.I.O. (to a local union of which the plaintiffs belong) and the appellee, and in the case of the appellant and a few of the other plaintiffs, to recover damages for their alleged layoff without regard to their seniority standing.[1]

1. It is asserted in the body of the complaint that these plaintiffs have a right to reinstatement in employment without loss of pay, but only money damages for alleged wrongful layoff are demanded in the prayer for relief.

■ The complaint alleges that the plaintiffs are all of age and residents of Puerto Rico, and that the defendant is a corporation with its principal office in the City and State of New York which is engaged in interstate commerce as a common carrier of passengers and freight by air.[2] Federal jurisdiction is alleged to exist "by virtue of the provisions of the Railway Labor Act (U.S.Code, Title 45, Chapter 8 [45 U.S.C.A. § 151 et seq.]) as amended on April 10, 1936, and of provisions of Section 16(b) of the Fair Labor Standards Act of 1938 [29 U.S.C.A. § 216(b)]." It is manifest on the face of the complaint, however, as will more fully appear hereinafter, that the plaintiffs base their respective claims upon alleged violations by the defendant-appellee of one or the other or both of two collective bargaining agreements to be presently described so far as material. Thus the rights sought to be vindicated in this action are not rights conferred by federal law. Strawser v. Reading Co., D. C.E.D.Pa. 1948, 80 F.Supp. 455 and Burke v. Union Pac. R. Co., 10 Cir. 1942, 129 F.2d 844 and the cases cited therein. See also Moore v. Illinois Central Railroad Co., 1941, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. However, the defendant-appellee, being for jurisdictional purposes a citizen of the State of New York which is not domiciled in Puerto Rico, and there being no doubt whatever that well over $3,000 is involved in this litigation, the court below had jurisdiction over the present controversy under § 41 of the Organic Act. 39 Stat. 965, as amended by 62 Stat. 989, 48 U.S.C.A. § 863. Our appellate jurisdiction under Title 28 U.S.C. § 1291 is clear.

The next matter for consideration is the plaintiffs' standing to sue in the absence of resort to the administrative procedures of the Railway Labor Act.

■ The respective lines of distinction between cases wherein resort to the National Railroad Adjustment Board is a prerequisite to relief in the courts, Slocum v. Delaware, L. & W. R. Co., 1950, 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795; Order of Railway Conductors v. Southern R. Co., 339 U.S. 255, 70 S.Ct. 585, 94 L.Ed. 811, cases in which a court must stay its hand until the Adjustment Board has had a chance to act, Order of Railway Conductors v. Pitney, 1946, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318 and cases in which the right to sue in a court is not dependent upon prior exhaustion of the administrative remedies provided in the Act, Moore v. Illinois Central R. Co., supra, may not be easy to draw in every situation. But in this case we are not required to trace those lines of distinction nicely for our case on its facts is analogous to the one last cited, wherein in a suit by a member of the Brotherhood of Railroad Trainmen against a railroad company for damages for alleged discharge contrary to the terms of a contract between the Trainmen and the railroad, the Court said, 312 U.S. at page 634, 61 S.Ct. at page 756, that it found "nothing in that Act which purports to take away from the courts the jurisdiction to determine a controversy over a wrongful discharge or to make an administrative finding a prerequisite to filing a suit in court." See also Slocum v. Delaware, L. & W. R. Co., supra, 339 U.S. 244, 245, 70 S.Ct. 579, 580, wherein the Moore case is distinguished. We see no reason why a suit to recover wages allegedly due under a collective bargaining agreement should stand on any different footing from one to recover for discharge in violation of such a contract, so we conclude on the basis of the Moore case, supra, that the courts may proceed at once to adjudication not only of the issue of wrongful discharge but also of the issue of wages due.

We turn, therefore, to the merits.

It appears without dispute that Transport Workers Union of America, C.I.O., and Pan American Airways, Inc., signed a collective bargaining agreement on December 18, 1945, covering hours, wages, and other conditions of employment generally, of Airline Mechanics (Shops and Hangers) denominated Group I, and Unskilled Workers (Shops and Hangers) denominated Group II, (in which latter Group all the plaintiffs belong) employed by Pan Ameri-

---

2. In subsequent pleadings it conclusively appears that the appellee corporation was organized under the laws of the State of New York.

can not only in continental United States, but also in Alaska, Honolulu, Puerto Rico, the Virgin Islands, and the Canal Zone. In Appendix "A" attached to that agreement it was provided that upon conversion of the field at which an employee worked to the 5-day 40-hour week "each employee in Group II shall receive a 20% increase in his hourly rate plus an additional increase of 3 cents an hour," that "An employee shall receive time and one half his then regular hourly rate for all hours worked over 40 per week from October 1, 1945 until installation of the 5-day 40-hour week at his Field for his class or craft," and that "An hourly paid employee regularly assigned to the second (afternoon) and third (night) shift shall receive 7 cents an hour shift differential above his regular base rate for all hours worked."

This agreement by its terms was to become effective as of its date, except as otherwise specifically provided therein, and it was to remain in effect until December 31, 1946, and to "renew itself without change until each succeeding December 31 thereafter, unless written notice of intended change is served in accordance with Section 6, Title 1, of the Railway Labor Act, as amended, by either party hereto at least thirty days prior to December 31, in any year." This agreement was duly filed in the office of the National Mediation Board, and it was approved by the National Railway Labor Panel on January 23, 1946.

Pan American's field at San Juan, Puerto Rico, where all the plaintiffs were employed, was converted to the 5-day 40-hour week on April 1, 1946, but just before that time, on March 20, 1946, Pan American and the Transport Workers Union signed an amendment of their contract of December 18, 1945, but only with respect to wage rates, and other matters not here pertinent, of Pan American's employees in Puerto Rico, the Virgin Islands, and the Canal Zone.

This amendatory agreement, like the one it amended, was to become effective upon its execution, except as otherwise expressly provided therein, and it was to continue in effect for the same period and to renew itself thereafter subject to the same conditions as the amended one. It fixed specific wage rates for various job classifications in Group II which were to become effective in Puerto Rico on April 1, 1946, and it provided that "Employees under this contract in Puerto Rico shall receive time and one half their then regular hourly rate for all hours worked over 40 per week up to a maximum of 8 overtime hours per week from October 1, 1945 to and including March 31, 1946." It also provided for a wage increase of 3 cents an hour, but only for employees in the group who "made satisfactory progress during the annual wage review period," and it omitted any provision for payment of a shift differential. It concluded with a provision that "All wage and overtime provisions of this amendment to the agreement are subject to the approval of the National Railway Labor Panel." In fact, however, the amendment never was submitted to the Panel, with the result that the Panel never approved it. Nevertheless it appears that Pan American, in spite of lack of approval by the Panel, after April 1, 1946, paid the wages fixed by the amendment instead of those fixed by the basic agreement. The instant action in its essence is one to recover the difference between the wages as fixed in the basic contract of December 18, 1945, and the wages actually paid under the amendment thereof of March 20, 1946.

The basic issue emerging from the above facts is whether the amendment ever became a valid and binding contract in the absence of submission to and approval by the Railway Labor Panel, for aside from this there is no serious suggestion that the amendatory agreement is invalid on any other ground.

The District Court at first thought that lack of approval by the Railway Labor Panel was fatal to the validity of the amendment. It therefore denied a motion by the defendant to dismiss the complaint, which was supported by proof in affidavit form of compliance with the terms of the amendment, and ordered the case to stand for trial. The defendant thereupon answered and the case was set for hearing, which was several times postponed for the

reason that counsel for the plaintiffs withdrew, and, in spite of urging by the court, the plaintiffs did not procure other counsel to take his place. Finally, however, the case came on for a hearing at which the only person to appear for any plaintiff was the present appellant appearing *pro se*. At that time the defendant renewed its motion to dismiss, and the court below in the light of the arguments then advanced granted the motion and entered the judgment from which this appeal is taken.

Section 5, Third (e) of the Railway Labor Act, as amended, 48 Stat. 1197, 45 U.S.C. § 155, Third (e), to which Act the defendant-appellee concedes that it is subject, after making provision for the filing with the Mediation Board by carriers subject to the Act of their employment contracts or informal employment arrangements provides:

"When any new contract is executed or change is made in an existing contract with any class or craft of its employees covering rates of pay, rules, or working conditions, or in those rates of pay, rules, and working conditions of employees not covered by contract, the carrier shall file the same with the Mediation Board within thirty days after such new contract or change in existing contract has been executed or rates of pay, rules, and working conditions have been made effective."[3]

Provisions for approval of the employment contracts of carriers subject to the Act are not found in the Act itself but stem from an amendment of the Emergency Price Control Act of 1942, approved on October 2, 1942, 56 Stat. 765, 50 U.S.C.A. Appendix, § 961 et seq., wherein in § 1 it is provided that "in order to aid in the effective prosecution of the war, the President is authorized and directed, on or before November 1, 1942, to issue a general order stabilizing prices, wages, and salaries, affecting the cost of living; and * * * such stabilization shall so far as practicable

be on the basis of the levels which existed on September 15, 1942", and in § 2 it is provided: "The President may, from time to time, promulgate such regulations as may be necessary and proper to carry out any of the provisions of this Act; and may exercise any power or authority conferred upon him by this Act through such department, agency, or officer as he shall direct." Pursuant to the broad powers conferred in the above amendment, the President issued a series of orders, and either directly or through subsidiary agencies or officers promulgated a series of regulations. No useful purpose would be served by detailing all of them herein. It will suffice to say that by the orders and regulations in force at the time the basic general contract under consideration herein was executed (December 18, 1945) such contracts, at least insofar as they affected employment in continental United States, by virtue of § 2 of Executive Order 9299, 45 U.S.C.A. § 156 note, (8 F.R. 1669) to be effective had to have the approval of the National Railway Labor Panel which had been established by the President on May 22, 1942, Executive Order 9172, 7 F.R. 3913, pursuant to the authority conferred upon him by the joint resolutions declaring war on Japan, Germany and Italy. 55 Stat. 795, 796, 797 (1941), 50 U.S.C.A.Appendix, note preceding section 1. However, agreements with respect to adjustments in wages paid by carriers subject to the Railway Labor Act to employees in any territory or possession of the United States, except Alaska (and later Hawaii) had been exempted from the requirement of Panel approval. Originally the National War Labor Board had been clothed with authority to approve contracts such as those under consideration herein. § 4001.2 of the Regulations of the Director of Economic Stabilization, 7 F.R. 8748 et seq. But the above Board also had authority under § 4001.14 id. to exempt wages paid in any territory or possession of the United States from the regulations

3. It appears that the amendatory agreement was not filed with the Mediation Board until long after thirty days after it was executed. But there is no suggestion anywhere in the Act that a carrier's failure to file renders an employment agreement invalid.

requiring approval, and it did so. by its General Order 8 (§ 803.8) on November 5, 1942, (7 F.R. 8981) except with respect to wages paid in Alaska. And on February 4, 1943, by Executive Order 9299 (8 F.R. 1669) the powers of the Board with respect to approval of contracts like the present were transferred bodily to the Railway Labor Panel. Therefore after November 5, 1942, agreements such as the amendatory one did not require the approval of either the Board or the Panel to be valid. Thus, although the basic agreement required Panel approval to become effective insofar as it dealt with wages paid in continental United States, the amendatory agreement did not, although the contracting parties apparently thought that it did, and indeed the Panel had no authority to approve the amendatory agreement, for it dealt only with wages paid to employees in Puerto Rico, the Virgin Islands and the Canal Zone. Therefore the provision therein making its provisions with respect to wages and overtime "subject to the approval of the National Railway Labor Panel" was not only unnecessary but also impossible of performance for the Panel had no authority to give its approval to those provisions. Hence the provision was nugatory under ordinary principles of the common law (See 2 Am.Law Inst., Restatement of Contracts, § 461) as well as under the law of Puerto Rico. Civil Code of Puerto Rico (1930) § 1224.

The issue of wrongful discharge remains for consideration.

This issue first appeared in the plaintiffs' amended complaint wherein it is generally alleged in paragraph 13:

"That the defendant corporation during the period from December 18th, 1945, up to the filing of this amended complaint [October 9, 1947] have violated Section 8, Letter (d) of the 'December 18th, 1945 agreement' laying off the employees named below: [eight are named including the appellant] without regard to their seniority standing. That each and all of the plaintiffs named in this paragraph have a right to be reemployed with the defendant corporation without loss of pay since the date of their respective dismissals."

The defendant in its motion to dismiss the amended complaint challenged the jurisdiction of the court to "entertain the claim set forth in paragraph 13" on the ground that under the Railway Labor Act the Railway Labor Board had exclusive jurisdiction to order "re-hiring of said employees and the payment to them of back pay." The affidavit filed by the defendant in support of its motion to dismiss makes no mention of the layoff or discharge of the eight plaintiffs named in the amended complaint, and the court in its original opinion denying the motion to dismiss did not touch upon the issue of layoff at all. The defendant's answer, filed after its first motion to dismiss was denied, specifically answered paragraph 13 of the amended complaint by denying "that it discharged the plaintiffs listed in said paragraph 13, without regard to their seniority status and to the contrary alleges that all discharges and/or layoffs of employees covered by said agreement have been made in strict compliance with the terms thereof." The defendant's second motion to dismiss does not mention the issue of unlawful discharge nor did the court refer to that issue in the opinion filed on granting the motion.

The issue of discharge in violation of the terms of the collective bargaining agreement seems to have been rather lost sight of in the course of the proceedings below. Perhaps this was because it was not adequately pleaded in the amended complaint, or perhaps it was because the plaintiffs did not regard the issue as having any genuine merit. We really cannot tell what became of the issue, and so we shall draft our mandate in such a way as to leave the door open for the court below on appropriate motion to revive the issue if the court should feel that justice so requires.

One further matter remains for consideration. The court below at the trial, and this court on appeal, have been considerably hampered in handling the case by reason of the plaintiffs' failure to procure counsel. This, however, the plain-

tiff-appellant contends, is due to the error of the court below in refusing the plaintiffs' request that the United States attorney be directed to represent them in the prosecution of this litigation. Indeed, this alleged error is the principal ground asserted by the plaintiff-appellant in support of his appeal.

The plaintiff-appellant's claim to the right to be represented in this action by the United States District Attorney rests upon § 2(10) of the Railway Labor Act, 45 U.S.C.A. § 152, Tenth, wherein it is in part provided:

"It shall be the duty of any district attorney of the United States to whom any duly designated representative of a carrier's employees may apply to institute in the proper court and to prosecute under the direction of the Attorney General of the United States, all necessary proceedings for the enforcement of the provisions of this section, and for the punishment of all violations thereof and the costs and expenses of such prosecution shall be paid out of the appropriation for the expenses of the courts of the United States".

This provision cannot be construed as burdening the Department of Justice with the duty to represent every employee, or group of employees, who may assert civil rights under § 2 of the Act. It merely broadens the duty of the Department of Justice by giving it specific responsibility to enforce the criminal sanctions imposed by the section, with which we are in no way concerned in this litigation, upon the application of any duly designated representative of a carrier's employees. Should the appellant feel that his case has not been adequately presented, he should have availed himself of the ample opportunity given him by the court below to obtain counsel, a course repeatedly recommended to him.

The judgment of the District Court is affirmed with reservation of power in that court to take further proceedings not inconsistent with this opinion.