1998 SD 95

**Delmer STENE, Plaintiff and Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Defendant and Appellee.**

No. 20342.

Supreme Court of South Dakota.

Argued June 1, 1998.

Decided Aug. 19, 1998.

Thomas K. Wilka of Hagen, Wilka & Archer, P.C., Sioux Falls, for plaintiff and appellant.

James E. Moore and William P. Fuller of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for defendant and appellee.

McMURCHIE, Circuit Judge.

[¶ 1.] This is an appeal from a circuit court judgment dismissing Delmer Stene's (Stene) complaint, with prejudice, and holding that a contract for insurance provided for the actual cash value of the cost of repair. We are also asked to review a prior order granting partial summary judgment. SDCL 15-26A-7. There the circuit court held in favor of State Farm Mutual Automobile Insurance (State Farm) in regard to Stene's claims of fraud and bad faith, demands for punitive damages, and damages arising as a result of emotional distress. We affirm.

## FACTS

[¶ 2.] Stene purchased a policy of insurance (Farm/Ranch Policy # 91-09-4844-2) from State Farm insuring him against specific loss in the course of his farming operation. As part of that policy, State Farm insured his 1982 combine for $50,000. This $50,000 value that Stene assessed to the machine, and reported to State Farm, was based on the advice of his John Deere dealer.

[¶ 3.] On December 13, 1991, Stene's combine broke down while he was traveling on a country road. Stene left the combine on the side of the road. Sometime during that night or the following night, the combine was vandalized by juveniles with shotguns. The juveniles shot through the combine's cab, shot out the combine's glass, and fired shots into the panel that housed the combine's electronic controls. Shortly thereafter, State Farm was notified of the loss.

[¶ 4.] A representative from State Farm, Agent Bruning, began investigating the loss. At the same time, Stene contacted various implement dealers and salvage yards asking for estimates. From the beginning, Stene and State Farm disagreed about the amount of the coverage and loss. Stene alleged that he was informed that the combine could not

be reliably repaired. Because of this, he claimed he was entitled to the replacement cost of the machine. This would have amounted to $50,000, the policy's limit, minus the salvage value represented in his estimates.

[¶ 5.] State Farm's agent, citing the insurance policy, informed Stene that State Farm was only required to "repair or replace" the combine and offered the actual cash value of the loss not to exceed the necessary cost of repairs. Stene was dissatisfied with this offer and demanded that State Farm pay him the replacement cost.

[¶ 6.] State Farm sent Stene a draft for $11,696.31, without seeking a release in return, so that the combine could be repaired as quickly as possible. This was done with the understanding that any newly discovered damages would also be repaired and paid for by State Farm. Stene endorsed the check under protest. Thereafter, all settlement negotiations failed due to Stene's demand for replacement, and State Farm's insistence that the machine could be reliably repaired. While Stene argued that salvaging the combine was appropriate, State Farm felt that repair was the best option. Stene then sued State Farm.

[¶ 7.] The circuit court granted State Farm's motion for partial summary judgment and dismissed Stene's claims based on fraud and bad faith, demands for punitive damages, and damages arising as a result of emotional distress. Then, upon stipulation, the circuit court heard and decided the legal issue of the insurance contract's interpretation. The circuit court again found in State Farm's favor and held that State Farm need only repair the combine under the terms of the insurance contract.

[¶ 8.] The following issues have been presented on appeal:

1. Did the circuit court's interpretation of the insurance contract constitute an error of law? No.

2. Do material issues of fact preclude summary judgment on Stene's bad faith and fraud claims? No.

3. Was summary judgment in favor of State Farm dismissing Stene's claim of emotional distress appropriate? Yes.

4. Was Stene's claim for punitive damages supported by clear and convincing evidence of fraudulent, malicious, or oppressive conduct by State Farm entitling Stene to submit this question to a jury? No.

## STANDARDS OF REVIEW

■ [¶ 9.] This appeal raises the issue of insurance contract interpretation which is a question of law, reviewable de novo. *National Farmers v. Universal*, 534 N.W.2d 63, 64 (S.D.1995); *State Farm Mut. Auto. Ins. Co. v. Vostad*, 520 N.W.2d 273, 275 (S.D.1994).

■ [¶ 10.] This appeal also presents issues pursuant to the granting of partial summary judgment in favor of State Farm. Our standard of review of a circuit court's grant or denial of a motion for summary judgment is well-settled. In reviewing the circuit court's decision:

We must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the non-moving party and reasonable doubts should be resolved against the moving party. The non-moving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Petersen v. Dacy*, 1996 SD 72, ¶ 5, 550 N.W.2d 91, 92 (quoting *Trippet Special Trust v. Blevins*, 1996 SD 29, ¶ 6, 545 N.W.2d 216, 221); *Waddell v. Dewey County Bank*, 471 N.W.2d 591, 593 (S.D.1991); *see also Wilson v. Great Northern Railway Company*, 83 S.D. 207, 157 N.W.2d 19 (1968).

■ [¶ 11.] Lastly, it is well settled that deposition testimony receives de novo review.

*Hanten v. Palace Builders, Inc.,* 1997 SD 3, ¶ 8, 558 N.W.2d 76, 78.

## ISSUE ONE

■ [¶ 12.] Stene's combine was insured under Section I, Coverage D—Scheduled Farm Personal Property, of the farm/ranch policy issued by State Farm. The policy stated the following under the heading SECTION I—CONDITIONS:

Loss Settlement. Covered property losses are settled as follows:

a. Actual Cash Value. The following covered property losses are settled at actual cash value, up to the applicable limit of liability, at the time of loss:

(1) personal property;

(2) carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings;

(3) scheduled farm personal property;

. . .

We will not pay an amount exceeding that necessary to repair or replace.

[¶ 13.] The policy also contained an option which would provide Stene with replacement cost for certain items. That option states:

Option RC—Replacement Cost—Contents. Under SECTION I—CONDITIONS, items a. (1) and (2) of the Loss Settlement Condition are replaced with the following:

(1) (a) The following personal property at actual cash value at the time of loss:

i. antiques, fine arts, painting, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

ii. articles whose age or history contribute substantially to their value including, but not limited to memorabilia, souvenirs and collector items;

iii. property not useful for its intended purpose.

(b) We will not pay:

i. an amount exceeding that necessary to repair or replace the property; or

ii. an amount in excess of the limit of liability applying to the property.

(2) Other personal property, carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings, at the cost of repair or replacement at the time of loss without deduction for depreciation, subject to the following:

(a) We will pay the cost of repair or replacement but not exceeding the smallest of the following amounts:

i. replacement cost at time of loss;

ii. the full cost of repair;

. . .

[¶ 14.] In deciding whether the circuit court's interpretation of the insurance contract was erroneous as a matter of law, these two provisions of the insurance contract must be read in conjunction with each other. Also, "[a]n insurance contract's language must be construed according to its plain and ordinary meaning and a court cannot make a forced construction or a new contract for the parties." *St. Paul Fire & Marine Ins. v. Schilling,* 520 N.W.2d 884, 887 (S.D.1994).

[¶ 15.] Stene's combine is listed as scheduled farm personal property in SECTION I under COVERAGE D. As scheduled farm personal property, the combine is valued at $50,000. Next, according to SECTION I, under CONDITIONS: Loss Settlement, several subsections under the heading "a. Actual Cash Value" list the items that will be covered up to an amount not exceeding that required to repair or replace. Scheduled farm personal property is listed as (a)(3).

[¶ 16.] Stene, however, claims that Option RC applies to his combine. This is simply not how the plain language of the policy reads. The replacement option, Option RC, clearly and unambiguously applies only to (a)(1) and (a)(2) found under SECTION I—CONDITIONS. Subsection (a)(3) is not included under Option RC.

[¶ 17.] There can be no doubt that the circuit court correctly interpreted the contract. Stene's combine, as scheduled farm personal property, is not covered by the replacement option, Option RC.

■ [¶ 18.] Next, on the issue of contract interpretation, Stene invites the court to adopt the doctrine of reasonable expectations and apply that doctrine to this case. We

again decline this invitation. *Alverson v. Northwestern Nat. Cas. Co.*, 559 N.W.2d 234, 236 (S.D.1997) (citing *American Family Mut. Ins. Co. v. Elliot*, 523 N.W.2d 100, 103 (S.D.1994)).

## ISSUE TWO

 [¶ 19.] A cause of action against an insurance company for bad faith failure to pay a claim is recognized in South Dakota. *Matter of Cert. of a Question of Law*, 399 N.W.2d 320, 322 (S.D.1987). An insurer's violation of its duty of good faith and fair dealing constitutes a tort, even though it is also a breach of contract. *Id.* The test to be met in a bad faith cause of action against an insurer is:

> [F]or proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] and the knowledge or reckless disregard [of the lack] of a reasonable basis for denial, implicit in that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured.

*Walz v. Fireman's Fund Ins. Co.*, 556 N.W.2d 68, 70 (S.D.1996). An insurance company may, however, challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis. *Id.*

 [¶ 20.] Stene claims the absence of a reasonable basis for denial for two reasons. The first is State Farm's alleged misinterpretation of the insurance contract; the second is State Farm's absence of a reasonable basis for concluding that the combine could be reliably repaired. Because of our resolution of Issue One we need not discuss Stene's first contention. However, the second contention requires examination.

[¶ 21.] Stene cites to numerous deposition exhibits supporting his contention that the combine could not be reliably repaired. The exhibits are copies of estimates that were provided to Stene by machinery repair shops and implement dealers. Notably, only the estimate from Mark's Machinery states that it would be difficult to return the combine to a reliable working machine.

[¶ 22.] Of the next two estimates that Stene claims show bad faith, one states that repairs would be in excess of $10,000; the other states that only salvage value would be given in trade, but that repairs would cost $10,072. The next two exhibits brought to the Court's attention show that the combine was appraised in the past, and that the combine could be repaired for just under $3,000. The last two deposition exhibits are salvage bids from mechanics with no mention whatsoever of a repair cost; neither mechanic was asked to prepare an estimate for repair.

[¶ 23.] The issue is not salvage value. The issue is whether State Farm was reasonable in its belief that the combine could be repaired. Again, only one of the several estimates shows any real misgivings about the reliability of repair. Even looking at the above facts in a light most favorable to Stene it is clear that State Farm had a reasonable basis for believing that the combine could be adequately repaired. It would be absurd to expect State Farm to "salvage out" a $50,000 combine when it was faced with repair bills not in excess of $15,000.

[¶ 24.] Lastly, the Court notes that the internal memorandums of State Farm indicate that one of the mechanics, J.R. Elmer, was "concerned about electrical, but [the combine] can be repaired." Clearly State Farm believed that the combine could be reliably repaired. The deposition exhibits do not present a genuine issue of material fact.

[¶ 25.] The record is filled with instances in which State Farm diligently attempted to negotiate and settle this claim. State Farm authorized and paid for all repairs related to the vandalism. State Farm consistently informed Stene that they would pay all repair bills to insure that the combine was returned to a reliably working machine. There was no bad faith on the part of State Farm; Stene was simply erroneously convinced that he was entitled to a settlement in the amount equal to the value of a replacement combine.

[¶ 26.] Therefore, we must conclude that the plaintiff's claim of bad faith was properly dismissed upon summary judgment for State Farm. "[A]llegations of fraud and deceit without specific material facts to substantiate them will not prevent summary judgment." *Taggart v. Ford Motor Credit Co.,* 462 N.W.2d 493, 498 (S.D.1990); *Western Cas. & Sur. Co. v. Gridley,* 362 N.W.2d 100, 102 (S.D.1985).

[¶ 27.] The essential elements of fraud are:

> [T]hat a representation was made as a statement of fact, which was untrue and *known to be untrue by the party making it, or else recklessly made;* that it was made *with intent to deceive* and for the purpose of inducing the other party to act upon it; and that he [or she] did in fact rely on it and was induced thereby to act to his [or her] injury or damage.

*Dahl v. Sittner,* 474 N.W.2d 897, 900 (S.D.1991)(emphasis original); *Holy Cross Parish v. Huether,* 308 N.W.2d 575 (S.D. 1981).

[¶ 28.] There is no specific, material evidence showing that Stene was misled or falsely induced into purchasing insurance which would entirely replace the combine upon any damage. The record reflects that Stene desired to have insurance coverage which would protect his combine no matter what happened. Based on that request, State Farm simply sold him a policy which expanded and compensated for loss associated with additional perils. This does not constitute fraud. The circuit court was correct in dismissing Stene's fraud claim.

### ISSUE THREE

[¶ 29.] Stene sought damages for "emotional distress." It is unclear whether he claimed negligent or intentional infliction of emotional distress. Regardless, the outcome is the same.

[¶ 30.] In order to sustain a claim for negligent infliction of emotional distress, Stene must show manifestation of physical symptoms. *Wright v. Coca Cola Bottling Co.,* 414 N.W.2d 608, 609–10 (S.D.1987); *Nelson v. WEB Water Development Ass'n, Inc.,* 507 N.W.2d 691, 699 (S.D.1993); *First National Bank v. Drier,* 1998 SD 1, ¶ 12, 574 N.W.2d 597. There was no evidence regarding physical symptoms which would uphold Stene's claim. Therefore, he must rely on intentional infliction of emotional distress if his claim for "emotional distress" is to survive.

[¶ 31.] This Court has previously set forth the elements necessary to establish a prima facie case for intentional infliction of emotional distress:

> 1) an act by defendant amounting to extreme and outrageous conduct;
>
> 2) intent on the part of the defendant to cause plaintiff severe emotional distress;
>
> 3) the defendant's conduct was the cause in-fact of plaintiff's distress;
>
> 4) the plaintiff suffered an extreme disabling emotional response to defendant's conduct.

*Tibke v. McDougall,* 479 N.W.2d 898 (S.D. 1992).

[¶ 32.] South Dakota's definition of the first element of this tort, extreme and outrageous conduct, as "conduct exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind," is well settled. *Tibke,* 479 N.W.2d at 907 (quoting *Groseth Intern., Inc. v. Tenneco, Inc.,* 410 N.W.2d 159, 169 (S.D.1987))(*Groseth I* ); *and citing Ruple [v. Brooks,* 352 N.W.2d 652 (S.D.1984) ]; *Wright v. Coca Cola Bottling Co.,* 414 N.W.2d 608; W. Prosser, Handbook of the Law of Torts § 12 (4th ed 1971)). "For conduct to be 'outrageous,' it must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Tibke,* 479 N.W.2d at 907.

[¶ 33.] In reviewing the record, the actions of State Farm do not meet the "extreme and outrageous" requirement and the circuit court properly granted State Farm's summary judgment motion with regard to any "emotional distress" claims.

## ISSUE FOUR

[¶ 34.] Lastly, this Court must determine if punitive damages were warranted. This issue need not be reached because no cause of action which can support a claim of punitive damages survives.

[¶ 35.] The judgment is affirmed.

[¶ 36.] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

[¶ 37.] McMURCHIE, Circuit Judge, for SABERS, J., disqualified.