Unified Judicial System

 

 
 Formatting provided courtesy of State Bar of South Dakota
and South Dakota Continuing Legal Education, Inc.
222 East Capitol Ave.
Pierre, SD 57501-2596
HTML Code Â© State Bar of South Dakota, 1999
THE SOUTH DAKOTA STATE CEMENT PLANT COMMISSION,
d/b/a South Dakota Cement Plant,
for the use and benefit of The State of South Dakota,
Plaintiff and Appellee,
v.
WAUSAU UNDERWRITERS INSURANCE COMPANY,
a member of Wausau Insurance Companies,
Defendant and Appellant.
[2000 SD 116]
South Dakota Supreme Court
Appeal from the Sixth Judicial Circuit, Hughes County, SD
Hon. Steven L. Zinter, Judge
#20789, #20815--Reversed
James S. Nelson, Paul S. Swedlund
Gunderson, Palmer, Goodsell & Nelson, Rapid City, SD
Attorneys for Plaintiff and Appellee.
James C. Robbennolt, Olinger, Lovald, Robbennolt & McCahren, Pierre, SD
Patricia St. Peter, Zelle & Larson, Minneapolis, MN
Attorneys for Defendant and Appellant.
Argued Oct 18, 1999; Opinion Filed Aug 23, 2000
AMUNDSON, Justice.
[Â¶1] Wausau Underwriters Insurance Company (Wausau) appeals the trial court's judgment finding Wausau breached its duty to defend its insured South Dakota State Cement Plant (SDCP), claiming they had no duty to defend because the underlying lawsuit against SDCP fell within the "absolute pollution exclusion" in SDCP's insurance policy with Wausau. Wausau also appeals the trial court's decision that Wausau was liable for the underlying settlement amount of $200,000, the amount for which SDCP settled the underlying lawsuit. We reverse.

FACTS

[Â¶2] SDCP is engaged in the business of manufacturing, marketing, and transporting cement products. This action involves SDCP's operations in Natrona County, Wyoming. Under Wyoming Air Quality Standards and Regulations, if a party wishes to construct or modify a facility which "may cause the issuance of, or an increase in the issuance of air contaminants into the air of the State [they] should obtain a construction permit from the State of Wyoming Department of Environmental Quality" (DEQ). See Wyoming Air Quality Standards and Regulations Â§ 21(a). Further, "the owner or operator of the facility is responsible for obtaining a permit to construct and/or operate and that the application shall show the design of the source, the nature and amount of emission, and the manner in which it will be operated and controlled." See id. at Â§ 21(b). SDCP submitted its permit application to the Wyoming Department of Environmental Quality (DEQ) in an effort to gain approval to operate its facility. SDCP noted on its permit application, which was submitted to DEQ, that the "pollutant removed" would be "cement dust," and the pollutant's emission would be controlled through the use of "air contaminant control equipment." Based upon this representation, SDCP received a waiver from the permit requirement and was allowed to operate its facility.
[Â¶3] From November 1987 to October 1989, DEQ received numerous complaints from residents regarding excessive cement dust emissions from SDCP. On November 15, 1989, SDCP received a notice of violation from DEQ, alleging a violation of Wyoming environmental statutes and regulations because of their excessive dust emissions. (fn1)  DEQ claimed that SDCP operated its facility "without full use of control equipment designed to limit excessive dust emissions;" a violation of Wyoming environmental statute 35-11-201 which provides that "[n]o person shall cause, threaten or allow the discharge or emission of any air contaminant in any form so as to cause pollution which violates rules, regulations and standards adopted by the Administrator ... ." In addition, SDCP was alleged to be in violation of section 21(a) of the Wyoming Air Quality Standards and Regulations which prohibits a person from using a facility "which may cause the issuance of, or an increase in the issuance of air contaminants into the air of the State" without a permit.
[Â¶4] On October 20, 1989, property owners and residents of the Brookhurst Subdivision, which is located near SDCP's Natrona County facility, commenced an action against SDCP and nineteen other defendants. The nineteen defendants were divided into two classes: "polluting defendants" and "developer defendants." The "polluting defendants" were SDCP and seventeen other industrial operations in the Natrona County area. The action was brought to recover compensation for damages to property and property interests, both past, present, and future, "as a result of defendant's past and present toxic chemical and other emission/discharges" from SDCP's industrial facility. The complaint also sought recovery for private nuisance, public nuisance, intentional and negligent violation of statutory, regulatory and other permits and rules, intentional and negligent infliction of emotional distress, strict liability, trespass, and negligence.
[Â¶5] SDCP had several general liability policies with Wausau during the time involving the litigation. These policies provided that Wausau had the "right and duty to defend any suit." However, the policies included an absolute pollution exclusion which relieves Wausau of liability on the policies if the bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants. Wausau refused to defend the suit against SDCP based upon the absolute pollution exclusion clause. Eventually, SDCP settled this lawsuit in November 1991 for $200,000, but incurred defense costs in the amount of $352,393 while defending the suit.
[Â¶6] SDCP brought an action against Wausau for breaching its duty to defend. On October 8, 1992, the circuit court denied Wausau's motion for summary judgment, ruling that Wausau had not affirmatively established that cement dust was a pollutant within the meaning of the absolute pollution exclusion. Subsequently, the court granted SDCP summary judgment on the issues that Wausau had a duty to defend and that Wausau was liable for the $352,393 in costs of defending the suit. Following a bench trial, SDCP was awarded the $200,000, plus prejudgment interest, as a proximate result for Wausau's breach of its duty to defend.
[Â¶7] The trial court held that "Wausau's policy would have covered the SDCP had SDCP been found liable for nuisance or trespass and had cement dust been found not to be a 'pollutant' within the meaning of Wausau's policies." In addition, "Wausau had a duty to defend the claims in the underlying complaint for trespass and nuisance allegedly caused by the 'other emissions/discharges.'" Finally, the trial court found that SDCP had proven a "causal connection between the settlement paid and Wausau's breach of its duty to defend" and that Wausau's breach was "instrumental" in "forcing the SDCP to settle the underlying suit." As a result, Wausau's breach of its duty to defend entitled SDCP to damages for breach of contract which would compensate SDCP for all detriment proximately caused by their breach of the duty to defend: the amount of the settlement ($200,000) plus prejudgment interest ($111,713.23).
[Â¶8] Wausau appeals on the following issues:


1. Whether Wausau had a duty to defend the underlying lawsuit because the allegations of the underlying complaint fall squarely within the absolute pollution exclusion of the Wausau policies.
2. Whether the trial court improperly concluded that Wausau was liable for the underlying settlement as a consequence of its alleged breach of its duty to defend.
SDCP filed a notice of review raising the following issues:


3. Whether Wausau was justified under the pollution exclusion in Wausau's policies in failing to defend a complaint that alleged trespass and nuisance in addition to pollution claims.
4. Whether Wausau was liable for all damages naturally and reasonably flowing from the breach of the duty to defend.

STANDARD OF REVIEW

[Â¶9] This case involves review of the trial court's granting of summary judgment on the issue of duty to defend. In discussing our standard of review for issues on summary judgment, we have often stated:


In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.
Stoebner v. South Dakota Farm Bur. Mut. Ins. Co., 1999 SD 106, Â¶6, 598 NW2d 557, 558 (quoting Weiss v. Van Norman, 1997 SD 40, Â¶9, 562 NW2d 113, 115 (citations omitted)). "[A] disputed fact is not 'material' unless it would affect the outcome of the suit under the governing substantive law in that a 'reasonable jury could return a verdict for the nonmoving party.'" Weiss, 1997 SD 40, Â¶11 n2, 562 NW2d at 116 (quoting Parsons v. Dacy, 502 NW2d 108, 110 (SD 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 US 242, 248, 106 SCt 2505, 2510, 91 LEd2d 202, 212 (1986)). We will affirm a granting of summary judgment "if the trial court has correctly decided the legal issues before it." Alverson v. Northwestern Nat'l Cas. Co., 1997 SD 9, Â¶4, 559 NW2d 234, 235 (citing Farmland Ins. Cos. v. Heitmann, 498 NW2d 620, 622 (SD 1993) (citations omitted)).
[Â¶10] The second part of this case on indemnification of the settlement amount was decided by a court trial. The court entered findings of fact and conclusions of law on June 15, 1998. A "trial court's findings of fact and decision are presumed correct and we will not seek reasons to reverse." City of Winner v. Bechtold Invs., Inc., 488 NW2d 416, 418 (SD 1992) (citations omitted). In addition, since this action was tried to a court without a jury, we "will not disturb findings unless evidence clearly preponderates against them." Id. (citing Gross v. Connecticut Mut. Life Ins. Co., 361 NW2d 259 (SD 1985) (further citations omitted)). "'In applying the "clearly erroneous" standard, we do not ask whether we would have made the same findings as did the trial court. Rather, the test is whether, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made.'" Mash v. Cutler, 488 NW2d 642, 645-46 (SD 1992) (quoting Chamberlain Livestock Auction v. Penner, 462 NW2d 479, 482 (SD 1990) (citing Temple v. Temple, 365 NW2d 561 (SD 1985); Cunningham v. Yankton Clinic, P.A., 262 NW2d 508 (SD 1978); In re Estate of Hobelsberger, 85 SD 282, 181 NW2d 455 (1970))). The construction and interpretation of an insurance contract is a question of law. See Colonial Ins. Co. of Cal. v. Lundquist, 539 NW2d 871, 873 (SD 1995), and State Farm Mut. Auto. Ins. Co. v. Wertz, 540 NW2d 636, 638 (SD 1995). Our standard of review for questions of law is de novo; therefore, "this Court is not required to defer to the trial court's legal determinations." Wertz, 540 NW2d at 638 (citations omitted).

DECISION

[Â¶11] 1. Whether Wausau had a duty to defend the underlying lawsuit because the allegations of the underlying complaint fall squarely within the absolute pollution exclusion of the Wausau policies.
[Â¶12] It is concerning and frustrating that this case was not resolved in a separate declaratory judgment action preceding the trial. (fn2)  This Court has previously noted that "[t]ypically, and most appropriately, the issue regarding an insurer's duty to defend arises in a separate declaratory judgment action, preceding a trial on the underlying damage action." Stoebner, 1999 SD 106, Â¶27, 598 NW2d at 561 (citations omitted) (Miller, J., dissenting). As Justice Miller noted in his dissent in Stoebner, "[i]t is unfortunate that neither party, especially [Wausau], sought to have this issue appropriately resolved earlier." Id.
[Â¶13] In the hearing on the summary judgment motion in regards to the duty to defend, the trial court noted that "the insurance company has the burden of proving that all the underlying claims clearly fall outside the policy coverage." The court found that "facts in the underlying action [exist] which would support a nuisance and trespass cause of action even if the jury in the underlying action was to find that the cement dust was not a pollutant, that it is a contaminant or an irritant within the meaning of the policy language." The court emphasized that the complaint should not be read as a whole; instead, "if any part of the underlying suit states a claim then there is a duty to defend." The trial court found, in granting SDCP's motion for summary judgment on Wausau's duty to defend, that "damages in nuisance and trespass" are causes of action "clearly, as well as potentially," within Wausau's policy coverage.
[Â¶14] In the present case, bodily injury and property damage coverage was provided by Wausau to SDCP in the "Products-Completed Operations Hazard" provision and the "Comprehensive Liability" provision. In each of the Wausau insurance policies, the "absolute pollution exclusion" (exclusion) provides:


This insurance does not apply:

...
(f) (1) to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
...
Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed. (Emphasis added.)
[Â¶15] We have often stated that "[a]n insurer's duty to defend and its duty to pay on a claim are severable and independent duties." Wertz, 540 NW2d at 638 (citing Hawkeye-Sec. Ins. Co. v. Clifford, 366 NW2d 489, 490 (SD 1985)). An insurer's duty to defend "'is much broader than the duty to pay a judgment rendered against the insured.'" Id. (quoting Hawkeye, 366 NW2d at 490). The insurer has the burden of showing that no duty to defend exists. Id. (citing North Star Mut. Ins. Co. v. Kneen, 484 NW2d 908, 912 (SD 1992)). The insurer's burden is satisfied by proving that the insured's claim "'clearly falls outside of policy coverage.'" Id. (quoting Kneen, 484 NW2d at 912 (citing City of Fort Pierre v. United Fire & Cas. Co., 463 NW2d 845, 847 (SD 1990); Bayer v. Employers Reinsurance Corp., 383 NW2d 858, 861 (SD 1986); Hawkeye, 366 NW2d at 492)) (emphasis in original). In addition, if it "arguably appears from the face of the pleadings in the action that the alleged claim, if true, falls within the policy coverage, the insurer must defend." Hawkeye, 366 NW2d at 491. If, after reviewing the complaint and other appropriate record evidence, "'doubt exists whether the claim against the insured arguably falls within the policy coverage, such doubts must be resolved in favor of the insured.'" Wertz, 540 NW2d at 638 (quoting City of Fort Pierre, 463 NW2d at 847 (citing Hawkeye, 366 NW2d at 492)).
[Â¶16] The following excerpts from the original complaint filed in the lawsuit identify the allegations against SDCP and the other "polluting defendants":

I.

Facts Common to All Causes of Action Against All Except Developer Defendants

...




2. This action is brought to recover compensation for damage to property and property interests, for present, past and the threat of future health problems, past, present and future hospital and doctor expenses, medications paid and to be paid, together with emotional injury suffered in the past and which will be suffered in the future by the plaintiffs as a result of defendant's past and present toxic chemical and other emissions/discharges and the threat of future emissions from the defendant's industrial facilities which have been and threatened to be conducted on the properties in the immediate vicinity of the Brookhurst Subdivision, Natrona County, Wyoming[.]

...


II.


Polluting Industries


...



O. South Dakota Cement

...




213. Competent medical authority has determined that the long-term inhalation and exposure to cement dust is hazardous to human and animal health, deleterious to vegetation growth, and the release of this substance has had the effect of decreasing the value of the properties of the plaintiffs.
214. By reason of the release of the cement dust as hereinabove described and by reason of the cement company's permitting the dust to escape its premises and envelope the Brookhurst Subdivision, including the properties and persons of the plaintiffs, the air, soil and waters of the subdivision have been altered and contaminated and rendered useless to the plaintiff's enjoyment, dangerous to the plaintiff's health and destructive to the value of the plaintiff's properties, as well as having the effect of being harmful to the plaintiffs, animals and plant life.
215. As a direct result of the negligent and willful and wanton release of the hazardous cement dust from the premises occupied and utilized by South Dakota Cement into the water, soil and air of the Brookhurst environment, the plaintiffs have been injured and their properties damaged in ways which are more particularly described in subsequent paragraphs of this Complaint.

...


III.

Plaintiff's First Cause of Action Against All Polluting Defendants: Private Nuisance



260. Plaintiffs ... allege that all named defendants have jointly and severally negligently and intentionally caused the air, ground and surface water, and soil contamination problems in Brookhurst Subdivision and that such actions ... constitute a private nuisance in the following, but not exclusive, respects:

...





f. The defendants, in causing the conditions which have led to the air, water and soil contamination problems in the Brookhurst Subdivision, have acted with reckless abandon amounting to a purpose to cause the contamination of the air, soil, ground and surface waters of the subdivision. ...

...


IV.

Plaintiff's Second Cause of Action Against All Polluting Defendant's: Public Nuisance



262. Plaintiffs ... allege that all the defendants have negligently and intentionally caused the contamination herein described in the Brookhurst Subdivision and that such actions of the defendant constitute a public nuisance in the following, but not exclusive, respects:

...


f. The defendants, in causing the conditions which have led to the air, water and soil contamination problems in the Brookhurst Subdivision have acted for the purpose of causing the plaintiffs to suffer such contamination without regard to their suffering and deprivation of their enjoyment of public facilities ... .

...


V.

Plaintiff's Third Cause of Action Against All Polluting Defendants: Damages Resulting From Intentional and Negligent Violations of Statutory, Regulatory and Other Permits and Rules
264. Plaintiffs ... allege that the various defendants have negligently and intentionally caused the contamination of the air, soil, ground and surface waters ... and that such actions of the polluting defendants have been in direct violation of their various duties of care to these plaintiffs guaranteed to them by Wyoming State laws and regulations.

...


VII.


Plaintiff's Fifth Cause of Action Against All Polluting Defendants: Strict Liability

...
270. The defendants have allowed toxic wastes to gather upon and to escape from the aforesaid facilities and migrate into the ground, air and waters of the Brookhurst Subdivision.

...
273. The toxic and hazardous substances heretofore identified have permeated the air and soil and have contaminated the ground and surface waters on and under Brookhurst, and these materials and substances have trespassed upon and contaminated the persons and properties of the plaintiffs.

...
XIII. [sic]
Plaintiff's Sixth Cause of Action Against All Polluting Defendants: Trespass
...
278. The defendants, by permitting the leakage and escape of toxic wastes into the environment of Brookhurst and, particularly, into the ground and surface water, the soil and the air of that environment, have set in motion various forces which, in the usual course of events, will damage the property and have damaged the persons and properties of these plaintiffs.

...
IX.
Plaintiff's Seventh Cause of Action Against All Polluting Defendants: Negligence
...
282. By reason of the negligent and willful and wanton acts and omissions of the defendants as have been, at least in part, described herein, the soil, air and waters of the plaintiffs have been contaminated and the wellbeing of the plaintiffs has otherwise been adversely affected.

(Emphasis added in all previous sections.)
[Â¶17] This is the first opportunity for this Court to review and interpret the parameters of an absolute pollution exclusion. It has been often noted that the purpose of a pollution exclusion clause is "to limit liability for environmental damage." Westchester Fire Ins. Co. v. City of Pittsburg, Kansas, 768 FSupp 1463, 1468-69 (DKan 1991). Pollution exclusion clauses are "'intended to exclude insurance coverage resulting from pollution and contamination of the environment, be it land, water, or the atmosphere.'" Id. at 1469. Many jurisdictions have upheld the pollution exclusion as a bar to the insurer's duty to defend. See, e.g., National Elec. Mfrs. Ass'n v. Gulf Underwriters Ins. Co., 162 F3d 821, 827 (4thCir 1998) (holding that the "pollution exclusion unambiguously and explicitly applies to exclude coverage" and therefore, insurer had no duty to defend); Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co., 976 F2d 1037, 1044 (7thCir 1992) (holding that because the underlying suit arises from the release of pollutants, the pollution exclusion bars coverage and the insurer did not owe a duty to defend).
[Â¶18] In the present case, Wausau contends that according to the pollution exclusion, all "bodily injury" or "property damage" arising out of the "actual, alleged, or threatened discharge, dispersal, release or escape of pollutants" precludes coverage in this case. It is Wausau's contention that each and every asserted claim against SDCP, including the trespass and nuisance claim, are premised upon SDCP's polluting conduct (emission of cement dust); therefore, the pollution exclusion clause negates any duty to defend that Wausau owes to SDCP.
[Â¶19] Wausau further argues that the cement dust released by SDCP constitutes a "pollutant." The pollution exclusion defines "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." Wausau claims that cement dust constitutes an "irritant" or "contaminate" within a literal dictionary definition of the terms. (fn3)  In addressing the dictionary definition of the terms, the circuit court noted that "[a]lthough the factual allegations in the underlying complaint do fit within the broad dictionary definition of 'contaminants' or 'irritants,' [the case of Guilford Indus., Inc. v. Liberty Mut. Ins. Co., 688 FSupp 792, 794 (DMe 1988)] has succinctly explained why Wausau's proposed 'construction cannot be sanctioned[.]'" The court noted that if it were to use "such a broad construction [it] would render the exclusion meaningless since any substance could conceivably irritate or contaminate."
[Â¶20] In Guilford, a flooding Piscataquis River caused two pipes from Guilford's textile mill's oil tanks to rupture and damage property down river from the plant. 688 FSupp at 793. The insurer's policy contained a pollution exclusion which applied to "pollutants, defined, in part, as any liquid irritant or contaminant." Id. at 794. Guilford contended that "the terms 'contaminant,' 'irritant,' and 'chemicals,' viewed broadly and in isolation, are 'meaningless,' and that by applying such a construction, "any substance would meet the exclusion." Id. In granting the insurer's motion for summary judgment on the coverage issue, the court opined that Guilford was correct that "almost any substance might fall within the exclusion," but the provision is far from "all-inclusive or meaningless" because to fall within the exclusion, the substance must meet a "certain very precisely drawn circumstance[]: if it is an irritant or contaminant." Id. The court ultimately found that the pollution exclusion provision was "far from all-inclusive or meaningless." Id.
[Â¶21] In the present case, the circuit court erred in its interpretation and application of Guilford. In addition, Guilford is distinguishable from the other cases cited by the circuit court because, in Guilford, the court ultimately upheld the provision as not being overly broad, but limited to a "certain very precisely drawn circumstance[]: if it is an irritant or contaminant." See Guilford, 688 FSupp at 794. Wausau's exclusion was intended not to cover any substance, but only those substances which irritate or contaminate.
[Â¶22] The circuit court opined that Wausau had failed to affirmatively set forth evidence to establish that cement dust falls within the pollution exclusion. The trial court refused to use Wausau's string of broad definitions to determine the pollution exclusion applied and found that "such a broad construction would render the exclusion meaningless since any substance could conceivably irritate or contaminate." Wausau argues that they "did not have the burden to prove that the cement dust released from SDCP's facility is, in fact, a 'pollutant.'" We agree. As we stated earlier, it is the well settled law in this jurisdiction that an insurer has the burden of showing that no duty to defend exists and this burden is satisfied by proving that the insured's claim "'clearly falls outside of policy coverage.'" Wertz, 540 NW2d at 638 (quoting Kneen, 484 NW2d at 912 (citations omitted)) (emphasis in original). To determine whether the insurer has a duty to defend, we must only look to the complaint and other record evidence to determine whether the alleged claim, if true, falls within the policy coverage. See Hawkeye, 366 NW2d at 491.
[Â¶23] A review of the complaint in this case reveals a common, basic underlying theory to all of the claims against SDCP, the emission of contaminants/cement dust. Does emission of cement dust fall within the confines of the pollution exclusion? We submit that it does. Under the "pollution exclusion" in the policy, "pollutants" are defined as "any solid, liquid, gaseous or thermal irritant or contaminant." The use of a string of definitions, as proposed by Wausau, is unnecessary in resolving this issue. Instead, a careful reading of the complaint in correlation with the pollution exclusion clause shows that the claims against SDCP were based upon allegations of "contamination," thereby clearly falling under the pollution exclusion and negating Wausau's duty to defend. A determination of whether cement dust actually constitutes a "pollutant" or "contaminant" is unnecessary; our obligation is to review the complaint and analyze whether "if any claim, if true, falls within the policy coverage." (fn4) 
[Â¶24] It is quite obvious that the parties in this case did not negotiate for coverage for damages caused by emission or contamination. It is not the function of this Court to rewrite a contract. See Kroupa v. Kroupa, 1998 SD 4, Â¶49, 574 NW2d 208, 217 (quoting Hisgen v. Hisgen, 1996 SD 122, Â¶17, 554 NW2d 494, 499) (Sabers, J., dissenting) (noting that "'[i]t is not a function of the court to rewrite the parties' agreements'"). See also Schlosser v. Norwest Bank South Dakota, 506 NW2d 416, 421 (SD 1993) (quoting Raben v. Schlottman, 77 SD 184, 190-91, 88 NW2d 205, 208 (1958)) (Wuest, J., concurring in part & dissenting in part) (stating that "'a court cannot make a contract for the parties that they did not make for themselves'") and Amdahl v. Lowe, 471 NW2d 770, 777 (SD 1991) (concluding that "we cannot create a contract for the parties which they did not intend"). Because the causes of action in the complaint are based upon alleged "contamination," assuming that the allegations that SDCP caused contamination are true, no coverage would apply and Wausau would not have a duty to defend because the causes of action in the complaint all clearly fall within the definition of pollution in the pollution exclusion clause. (fn5)  Therefore, the trial court erred in granting summary judgment in favor of SDCP on the issue of duty to defend. Further, the trial court erred in denying Wausau's motion for summary judgment on the duty to defend issue.
[Â¶25] 2. The trial court improperly concluded that Wausau was liable for the underlying settlement as a consequence of its alleged breach of its duty to defend.
[Â¶26] Based upon our disposition of issue one, we also reverse the trial court's settlement award to SDCP, which was based upon Wausau's breach of its duty to defend.
[Â¶27] Based upon our disposition of this issue, we need not address SDCP's notice of review issues regarding whether the exclusion specifically applies to "property damage" and "bodily injury," not "personal injury." Notably, SDCP in its brief to this Court, raised this issue for the first time in this case. It is this Court's well settled position that issues not advanced at trial cannot ordinarily be raised for the first time on appeal. See State v. Henjum, 1996 SD 7, Â¶13, 542 NW2d 760, 763 (citations omitted). If a party fails to raise an issue, it is deemed waived. Mash, 488 NW2d at 648. Therefore, because SDCP never argued this theory below, it is deemed waived.
[Â¶28] We reverse.
[Â¶29] MILLER, Chief Justice, and ANDERSON, Lee D., Circuit Judge, concur.
[Â¶30] SABERS, and GILBERTSON, Justices, dissent.
[Â¶31] ANDERSON, Lee D., Circuit Judge, sitting for KONENKAMP, Justice, disqualified.
GILBERTSON, Justice (dissenting).
[Â¶32] Wausau did not meet its burden of proving that the cement dust released by SDCP constitutes a pollutant within the meaning of Wausau's policy pollution exclusion clause. I agree with the circuit court's analysis and rationale in refusing Wausau's broad construction of the words "contaminant" and "irritant" so as to preclude coverage. To accept Wausau's all encompassing definition is to assume that SDCP paid for a comprehensive policy that provided almost no coverage. Thus, I disagree with the majority opinion and dissent.
[Â¶33] Wausau, as the insurer in this case, has the burden of showing that no duty to defend exists. State Farm Mut. Auto. Ins. Co. v. Wertz, 540 NW2d 636, 638 (SD 1995) (citing North Star Mut. Ins. Co. v. Kneen, 484 NW2d 908, 912 (SD 1992)). The insurer must prove that the insured's claim "clearly falls outside of policy coverage" to satisfy this burden. Id. (quoting Kneen, 484 NW2d at 912 (citing City of Fort Pierre v. United Fire & Cas. Co., 463 NW2d 845, 847 (SD 1990); Bayer v. Employers Reinsurance Corp., 383 NW2d 858, 861 (SD 1986); Hawkeye-Sec. Ins. Co. v. Clifford, 366 NW2d 489, 490 (SD 1985))). "Limits to coverage, whether in exclusions, limitations, riders, or endorsements, should be set forth clearly and explicitly." Mid-Century Ins. Co. v. Lyon, 1997 SD 50, Â¶9 n4, 562 NW2d 888, 891 (citing Essex Ins. Co. v. Fieldhouse, Inc., 506 NW2d 772, 776 (Iowa 1993) (other citations omitted)). "This rule of construction applies with particular force to provisions which attempt to exclude liability coverage under certain conditions." Westchester Fire Ins. Co. v. City of Pittsburgh, Kan., 768 FSupp 1463, 1467 (DKan 1991).
[Â¶34] If after reviewing the complaint and the record "doubt exists whether the claim against the insured arguably falls within the policy coverage, such doubts must be resolved in favor of the insured." Wertz, 540 NW2d at 638 (quoting City of Fort Pierre, 463 NW2d at 847 (citing Hawkeye, 366 NW2d at 492)). (fn6) 
[Â¶35] While Wausau urges this Court to adopt the literal, dictionary meanings of these terms, this is not appropriate because it isolates the terms, and takes them out of context. The circuit court was correct when it concluded that taking the terms out of context and construing them broadly in effect "render[s] the [pollution] exclusion meaningless since any substance could conceivably irritate or contaminate." In reaching this conclusion the circuit court relied upon Guilford Industries Inc. v. Liberty Mut. Ins. Co., 688 FSupp 792 (DMe 1988). The court in Guilford noted that if adopted, a broad construction of the meaning of the terms "contamination" or "irritants" would render a pollution exclusion meaningless, since any substance could conceivably irritate or contaminate. Id. at 794.
[Â¶36] Many other courts follow this rationale. See In re Hub Recycling, 106 BR 372, 375 (DNJ 1989); Sullins v. Allstate Ins. Co., 667 A2d 617, 621 (MdApp 1995); Certain Underwriters at Lloyd's London v. C.A. Turner Constr. Co. Inc., 112 F3d 184, 188 (5thCir 1997); Regional Bank of Colorado, N.A. v. St. Paul Fire & Marine Ins. Co., 35 F3d 494, 498 (10thCir 1994); Westchester, 768 FSupp at 1470. The circuit court was correct in concluding that because a broad interpretation of pollution exclusion clauses could potentially eliminate coverage in virtually all situations, courts must distinguish between harmful and relatively benign substances.
[Â¶37] While the Court correctly points out that the court in Guilford granted the insurer's motion for summary judgment on the coverage issue, the court stated that the policy provision in that case was "far from all-inclusive or meaningless" because to "fall within the exclusion, ... it can only do so in certain very precisely drawn circumstances: if it is an irritant or contaminant." Guilford, 688 FSupp at 794. In Guilford, the court noted that the substance charged as the contaminant or irritant was oil, which clearly has been recognized as a pollutant. The court stated "[p]laintiff's argument that it could not reasonably have expected oil to be considered a pollutant is disingenuous." Id. n1.
[Â¶38] Such is not the case here. The alleged pollutant in this case is cement dust, a substance which has not been so clearly defined as a "pollutant," let alone a "contaminant." (fn7)  The substance must generally "occur in a setting such that they would be recognized as a toxic or particularly harmful substance in industry or by governmental regulators." Regional Bank of Colorado, 35 F3d at 498 (citing Westchester, 768 FSupp at 1470 (stating that a 'pollutant' is not merely any substance that may cause harm to the 'egg shell plaintiff,' but rather it is a toxic or particularly harmful material which is recognized as such in industry or by governmental regulators.")); see also In re Hub, 106 BR at 376 (concluding recycled materials were not "inherently toxic," in contrast to dioxin-tainted waste oil or oil discharged into rivers and other bodies of water to bring the plaintiff's cause of action within the pollution exclusion clause); Molton, Allen & Williams, Inc. v. St. Paul Fire & Marine Ins. Co., 347 So2d 95, 98 (Ala 1977) (stating that a pollution exclusion does not apply to natural substances such as sand merely because they are deposited on another's property).
[Â¶39] Courts have concluded that a pollution exclusion clause is not intended to exclude all substances merely because a substance may irritate or contaminate. Thus, a number of courts have chosen to distinguish between relatively benign substances and substances that cause degradation to the environment. The terms used in Wausau's exclusion clause, such as "discharge," "dispersal," "release" and "escape," are terms of art in environmental law and are generally used to refer to damage or injury resulting from environmental pollution. (fn8)  Sullins, 667 A2d at 617 (citing Atlantic Mut. Ins. Co. v. McFadden, 595 NE2d 762, 764 (Mass 1992) (stating "[t]he terms used in the pollution exclusion such as 'discharge,' 'dispersal,' 'release,' and 'escape' are terms of art in environmental law which generally are used with reference to damage or injury caused by improper disposal or containment of hazardous waste."); West American Ins. Co. v. Tufco Flooring East, Inc., 409 SE2d 692, 699 (NCApp 1991) (noting that the terms "discharge" and "release" are terms of art in environmental law)). "[A]n ordinarily intelligent insured could reasonably interpret the pollution exclusion clause as applying only to environmental pollution," as opposed to personal injury claims brought by private landowners. Nautilus Insurance Co. v. Jabar, 188 F3d 27, 30 (1stCir 1999); see also Stoney Run Co. v. Prudential-LMI Commercial Ins. Co., 47 F3d 34, 38 (2d Cir 1995) (stating the pollution exclusion clause can be reasonably interpreted as applying only to environmental pollution); Regional Bank of Colorado, N.A., 35 F3d at 498 (stating "[i]t seems far more reasonable that a policyholder would understand the exclusion as being limited to irritants and contaminants commonly thought of as [environmental] pollution and not as applying to every possible irritant or contaminant imaginable."); American States Ins. Co. v. Koloms, 687 NE2d 72, 82 (Ill 1997) (stating "we hold that the exclusion applies only to those injuries caused by traditional environmental pollution.")).
[Â¶40] A limiting principle of some kind must be applied to pollution exclusion clauses such as Wausau's, for otherwise "the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results." Jabar, 188 F3d at 31 (citing Pipefitters Welfare Educational Fund. Westchester Fire Ins. Co., 976 F2d 1037, 1043 (7thCir 1992)); see also Westchester, 768 FSupp at 1470 (concluding that the insurance company's broad reading of "irritant or contaminant" to include a fogging mixture as a pollutant "stretch[es] the definition of 'pollutant' beyond 'what a reasonable person placed in the position of the insured would have understood the word to mean.'). The Seventh Circuit Court of Appeals in Pipefitters provided two examples of how a pollution exclusion clause might be extended beyond its intended scope:


To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution.
976 F2d at 1043. In this case, under Wausau's suggested broad interpretation of the pollution exclusion clause, "almost any function undertaken by [the government] could be characterized as 'polluting' under the [clause]." Westchester, 768 FSupp at 1470.
[Â¶41] Admittedly, it is not "crystal clear" under the pollution exclusion clause whether cement dust can be considered a "pollutant," "contaminant," or "irritant." However, it is for that very reason the parties in this case have gone through extensive litigation - the terms as used in Wausau's pollution exclusion clause are susceptible to different interpretations. The fact that the parties are contesting what is meant by the terms "pollutant," "contaminant," or "irritant" and can mount a valid argument on their behalf is supportive of the conclusion that the pollution exclusion clause is ambiguous. Therefore, the policy should be construed in favor of SDCP. "Where an insurance policy is susceptible to different interpretations, the interpretation most favorable to the insured must be adopted." Colonial Ins. Co. of Cal. v. Lundquist, 539 NW2d 871, 873 (SD 1995); see also Christensen v. Royal Insurance Co. of Liverpool, 272 NW 820, 65 Sd 246 (1937) (stating that an exclusionary clause is strictly construed and doubts as to its construction are resolved in favor of the insured); Tokley v. State Farm Ins. Co., 782 FSupp 1375 (DSD 1992) (stating exclusionary clauses are interpreted strictly in favor of coverage for the insured).
[Â¶42] For these reasons I would affirm the circuit court's refusal to grant Wausau's motion for summary judgment, as the pollution exclusion clause is ambiguous as a matter of law.
[Â¶43] I would also affirm the circuit court's settlement award to SDCP, because there has been no showing that its finding the $200,000 naturally flowed from Wausau's refusal to defend is clearly erroneous.
[Â¶44] SABERS, Justice, joins this dissent. 
Footnotes
1.  In addition to receiving the "Notice of Violation," SDCP also received a letter from Charles Collins, the administrator of the Wyoming Air Quality Division. Collins informed SDCP that,


[SDCP has failed] to utilize stated control equipment at the cement rail/truck transfer facility in Evansville, Wyoming.
Proper operation of this facility according to the terms of your original application has been a consistent problem for a number of years. In 1982 and again in 1983, I authorized the waiving of permitting requirements for this facility based on the relatively insignificant emissions resulting from this operation so long as the stated control equipment were in place and used at all times during operation.
I must tell you that continued incidents such as that specified in the enclosed Notice will force me to rescind your waiver under the authority of W.S. 35-11-110, "Powers of Administrators" and require that a formal permit to operate be obtained. I must also advise you that in today's environment, particularly in the Casper area, success in obtaining such a permit is by no means assured. 
2.  Notably, Judge Zinter stated in his findings of fact and conclusions of law in the action on damages for the cost of settlement, that "Wausau did not seek a declaratory judgment nor did it defend under a reservation of rights." 
3.  Wausau argued in its summary judgment motion and its brief to this Court that Webster's Ninth Collegiate Dictionary defines "contaminant" as "something that contaminates." "Contaminant" is defined as: "1 a: to soil, stain, corrupt, or infect by contact or association ... > b: to make inferior or impure by admixture ... > 2: to make unfit for use by the introduction of unwholesome or undesirable elements." "Irritant" is defined as "something that irritates or excites." "Irritate" is defined as: "1: to provoke impatience, anger, or displeasure in: ANNOY 2: to induce irritability in ~ vi: to cause or induce displeasure or irritation." 
4.  SDCP argues that cement dust is not a pollutant. In Westchester, 768 FSupp at 1470, the court noted that a pollutant is a substance that is "a toxic or particularly harmful material which is recognized as such in industry or by governmental regulators." In the present case, cement dust is governmentally regulated. SDCP was required to obtain a variance before emitting the cement dust into the air. On the application, SDCP listed that "pollutant removed" as "cement dust." In addition, SDCP had received a notice of violation from DEQ alleging excessive dust emission in violation of Wyoming environmental statutes and regulations. As the court in Pipefitters noted, "[t]he scope of ... [Wausau's] pollution exclusion is governed by the expectations of a reasonable policyholder, [citations omitted], and a reasonable policyholder would have to expect that the discharge of [cement dust] at the [SDCP] site was pollution. See 976 F2d at 1044. Why else would a government regulate cement dust emission and provide notice of violation of environmental statutes and regulations unless it was not a harmful material or pollutant if emitted into the air? To argue that cement dust is not a pollutant faced with government regulation on the substance appears to be a specious argument at best. 
5.  In the present case, we are confronted with a permit application to the Wyoming Department of Environmental Quality by Cement Plant in an effort to gain approval to operate its facility. This permit specifically requested that Cement Plant disclose what pollutant would be removed and how it would be removed. Cement Plant specifically declared the pollutant removed would be "cement dust." The dissent argues that cement dust has never been "clearly defined as a 'pollutant,' let alone a 'contaminant.'" The dissent further contends that "[t]he substance must generally 'occur in a setting such that they would be recognized as a toxic or particularly harmful substance in industry or by governmental regulators.'" In support of its argument, the dissent relies on several cases. None of the cases deal with industrial discharges where a permit application is involved, such as in the present case. See, e.g., Regional Bank of Colorado v. St. Paul Fire & Marine Ins. Co., 35 F3d 494 (10thCir 1994) (dealing with carbon monoxide poisoning at a rental apartment); In re Hub Recycling, Inc., 106 BR 372 (DNJ 1989) (addressing the pollution of land by landowners recycling business and its subsequent clean up); Molton, Allen & Williams v. St. Paul Fire & Marine Ins., 347 So2d 95 (Ala 1977) (involving the washing of sand down wet-weather streams by virtue of rainfall into the lakes owned by Williams). The dissent's reliance on Regional Bank is misplaced based upon the reliance by the Regional Bank decision on the doctrine of reasonable expectations. This doctrine has never been adopted by South Dakota; in fact, this Court has repeatedly declined to adopt the doctrine. See Stene v. State Farm Mut. Auto. Ins. Co., 1998 SD 95, Â¶18, 583 NW2d 399, 402-03; Alverson, 1997 SD 9, Â¶14, 559 NW2d at 237. 
6.  I further part company with the Court in its erroneous use of the complaint as the sole pleading for determining the coverage issue. In Wertz we specifically stated such a determination is to be made "after considering the complaint, and when appropriate, other record evidence ..." 540 NW2d at 638. (emphasis added). It is clear throughout the Wyoming litigation and subsequently this case that SDCP has taken the position that the cement dust is not a pollutant and thus is not subject to the "absolute pollution exclusion" of the policy. The unfairness of solely considering the allegations of the plaintiff's complaint to determine whether the defendant is entitled to insurance coverage and a defense is obvious. Trusting a hostile plaintiff to look out for the best interests of the defendant concerning the defendant's rights under an insurance policy is illogical. A well-drafted complaint may strip the defendant of its coverage in expensive litigation thus limiting the defense the defendant can put forth or force an outright capitulation for economic reasons. The Court in Allstate Ins v. Novak, 313 NW2d 636, 641 (Neb 1981) addressed this very issue:


Allstate would argue that it has no duty to defend because the petition filed by Steward against Novak shows on its face that it is a suit based upon assault and battery and therefore outside the terms of the policy. There are cases that can be found, including cases within our own jurisdiction, which say that the insurer may look only to the petition or complaint to determine whether it has an obligation to defend, and if the complaint or petition on its face alleges facts which bring the action within an exclusion of the policy there is no obligation to defend. We believe that those cases are not based upon sound reasoning nor recognize the reality of today's litigation. A plaintiff may plead anything he desires. Should we then leave the insured to his own defense based upon what the suing party claims, or should we require the carrier to examine all the facts to determine whether there is the possibility of coverage under the policy? We believe that the better reasoned cases support the latter view and are correct.
See also Aetna v. Cochran, 651 A2d 859, 864-65 (MdApp 1995); Alabama Farm Bur. Mut. Cas. Ins. Co. v. Moore, 349 So2d 1113, 1116 n4 (Ala 1977) (citing Ladner and Co. v. Southern Guaranty Ins. Co., 347 So2d 100 (Ala 1977)) (stating "[i]n determining whether an insurance company has breached its duty to defend, a judge or jury may look beyond the complaint."). In Ladner, the court stated "in deciding whether a complaint alleged such injury, the court is not limited to the bare allegations of the complaint in the action against [the] insured but may also look to facts which may be proved by admissible evidence." 347 So2d at 103 (citing Pacific Indemnity Co. v. Run-A-Ford Co., 161 So2d 789, 795 (1964)). 
7.  I do not agree with the Court's statement in Footnote 4. Because the underlying case in this matter was settled, no finding was ever made below determining whether cement dust is a pollutant. However, the circuit court determined that Wausau breached its duty to defend "because a Wyoming jury could have decided that cement dust of SDCP was not a "pollutant[.]" I agree with the circuit court, since testimony offered at the court trial strongly suggested that cement dust is not inherently dangerous in the sense of an irritant or contaminant, and thus not subject to the policy's exclusion. Testimony was offered that established cement is not listed as a hazardous air pollutant under the terms of the Clean Air Act. The circuit court also heard evidence that calcium carbonate, the major component of cement, is classified only as a "nuisance dust," does not possess any hazardous ingredients according to SDCP's material safety data sheets, and is not a toxic chemical or indisputedly harmful substance. Material safety data sheets are provided to both employees of SDCP and its customers. The sheets describe what a certain material is, any health hazards associated with the material, and any precautions the employee or user of the material may need to take.
In Footnote 5, the Court essentially states that this case is controlled by the fact SDCP "specifically declared the pollutant removed would be "cement dust"" on its permit application to the Wyoming Department of Environmental Quality. This 1983 permit includes one line for indicating what "pollutant" is to be removed for purposes of air contaminant control equipment. A review of the permit offers no other information, such as criteria for determining what constitutes a "pollutant" for purposes of the permit or environmental standards. Thus, without more, SDCP's placement of the words "Cement dust" within the column of "Pollutant Removed" should not be treated as a dispositive admission on the part of SDCP, as the Court seemingly purports to do. Again, a great deal of evidence was presented at trial that suggests cement dust is not a pollutant per se or inherently toxic. Expert testimony at trial alluded to the example that if an individual were to swallow a bucket-full of portland cement, calcium carbonate or calcium oxide, it could harm the individual. Likewise, cement dust, if placed directly in the eyes may irritate, but it is not a toxic substance and does not harm the environment in a way that would normally allow one to characterize the event as "pollution." See Westchester, 768 FSupp at 1470; Pipefitters Welfare Educational Fund v. Westchester Fire Ins. Co., 976 F2d 1037, 1043 (7th Cir 1992). While I am in no way reviewing the merits of the underlying case, I am of the opinion that Wausau has not established that cement dust is recognized as an environmental hazard of such significance as to constitute a "pollutant" per se. 
8.  Pollution exclusion clauses have become very common in insurance liability policies as a result of "Congress' enactment of broad, sweeping legislation directed at cleaning up and protecting the limited resources of the United States." Westchester, 768 FSupp at 1469 n8. The Clean Air Act Amendments were passed in 1970, which "imposed greater potential economic burdens on insurance underwriters of comprehensive general liability policies." Id. Congress mandated an amendment to the Clean Air Act to include a hazardous air pollutant list in 1990.