■ VIGILANT INSURANCE COMPANY, Respondent, v V.I. TECHNOLOGIES, INC., et al., Appellants. [676 NYS2d 596] —Order and judgment (one paper), Supreme Court, New York County (Ira Gammerman, J.), entered January 30, 1998, granting plaintiff summary judgment and declaring that it has no obligation to indemnify defendant from the subject loss, unanimously reversed, on the law, without costs, and summary judgment granted to defendant declaring that plaintiff is obligated to indemnify defendant for any damages resulting from the contamination of blood plasma by the seepage of ethylene glycol.

Defendant is in the business of fractionating whole blood plasma into component parts, by use of refrigerated centrifuge machines, for ultimate transfusion into human beings. The value of the plasma in defendant's control at any one time is as much as $5 million. Defendant's processing agreement with Bayer, the principal supplier of plasma, requires defendant to maintain $5 million coverage for "casualty, spoilage, loss, theft, fire, damage or destruction to personal property of others in its care, custody and control".

The policy coverage is for any loss whatever unless covered by an exclusion. Under "Exclusions" there is a subheading "Pollutants", which elaborates: "release, discharge or dispersal of pollutants unless the release, discharge or dispersal is itself caused by any of the named causes of loss", which include fire, lightning, explosion, smoke, vandalism, riot, etc. "Pollutants" is defined as "any solid, liquid, gaseous or thermal irritant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste". Ethylene glycol, the coolant that leaked from the centrifuge and contaminated the plasma, is a chemical.

In the IAS Court, as on appeal, plaintiff insurer argued that the exclusion unambiguously precluded coverage because ethylene glycol is not only a chemical, but is classified as a "pollutant" in Federal environmental regulations. Since the chemical was "released, discharged or dispersed as the result of a leak in the cooling coils into the plasma," that ended the inquiry, an argument apparently accepted by the court.

Defendant argued, as related by the IAS Court, that the plaintiff insurer's interpretation "is at odds with the commonly understood meaning of such clauses, which connote a discharge that is in some sense environmental, or at least more general than a leak contained inside a processing machine. Further, [defendant insured] argues, that even if the pollution exclusion is not limited solely to instances of environmental pollution, the exclusion, at best, creates an ambiguity that must be resolved in favor of the insured".

The IAS Court acknowledged that in order to "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case", citing *Continental Cas. Co. v Rapid-American Corp.* (80 NY2d 640, 652). It also acknowledged the numerous cases cited by defendant finding that "pollution exclusion clauses refer [to] a discharge that is in some sense environmental, an escape of harmful material into the soil, water, or air, or generally, the environment, and that non-environmental contamination is not 'pollution' within the meaning of those clauses".

However, noting that the foregoing cases involved pollution clauses in third-party liability policies rather than, as here, first-party claims, the court apparently found those cases irrelevant, stating: "The purpose of third-party liability exclusions is to exclude third-party claims by adjoining landowners, governmental entities and other outsiders, while first-party exclusions are to exclude losses related to personal property, where there is no concern about environmental risk". We disagree.

The commonly understood meaning of the language in question should not be held to be different depending on whether it is used in a "first-party" or "third-party" policy.

The principles governing the application of exclusion language to a loss were summarized in *Tanzer v Health Ins. Plan* (238 AD2d 109, 110 [Tom, J., dissenting], *revd* 91 NY2d 850):

"It is axiomatic that 'in order for an insurer to negate coverage through an exclusion, it must establish that the exclusion is set forth in clear and unmistakable language, that it is subject to no other reasonable interpretation, and that it applies to the facts of the particular case' (*Consolidated Edison Co. of N. Y. v Hartford Ins. Co.*, 203 AD2d 83, 84; *see also, Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 652; *Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 311). In addition, any ambiguities in an insurance policy must be construed against the insurer who drafted it, 'particularly when found in an exclusionary clause' * * *

"In the matter before us, [the insurer] has failed to meet its burden of establishing that 'the construction it advances is not only reasonable, but also that it is the only fair construction of the language' * * * especially since the clause must be interpreted through the eyes of the 'average [person] on the street' ".

The pollution exclusion here does not apply to this contamination by leakage within a processing machine by "clear and unmistakable language," and there is "no other reasonable interpretation" except that it applies (*supra,* at 110). No one would say defendant insured is a "polluter," because the ordinary meaning of the term would not apply. Neither can it be said that the words "release, discharge or dispersal" apply here, since in the context of "pollution," those words connote a spread beyond containment in the owner's premises, to the outside air, land or water.

The availability of common language that could have been used to draft an unambiguous exclusion, *i.e.,* contaminants or chemical refrigerant seepage, weighs in favor of defendant's position that the pollution language here at issue is either unambiguous in not applying to this internal contamination loss, or that it is ambiguous, in which case, "doubt must be resolved in favor of the insured and against the insurer" (*Lavanant v General Acc. Ins. Co.,* 79 NY2d 623, 629; *see, Ace Wire & Cable Co. v Aetna Cas. & Sur. Co.,* 60 NY2d 390, 398): "The tests to be applied in construing an insurance policy are common speech * * * and the reasonable expectation and purpose of the ordinary businessman * * * The ambiguities in an insurance policy are, moreover, to be construed against the insurer, particularly when found in an exclusionary clause" (60 NY2d, *supra,* at 398). Concur—Williams, J. P., Tom, Mazzarelli and Andrias, JJ.