## VI

Lisa A. Varano and Stephen M. Varano, Appellees.

Stern Company, Inc., Appellee.

No. 98–2158.

United States Court of Appeals, First Circuit.

Heard June 9, 1999.

Decided Aug. 30, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 7, 1999.

NAUTILUS INSURANCE COMPANY, Plaintiff, Appellant,

v.

Michael G. JABAR, d/b/a Mike's Roofing Co., Defendant, Appellee.

28

Kevin J. Beal, with whom Preti, Flaherty, Beliveau & Pachios, L.L.C. was on brief, for appellant.

Laura A. Foggan, Daniel E. Troy and Wiley, Rein & Fielding on brief for Insurance Environmental Litigation Association, amicus curiae.

Joseph M. Jabar, George M. Jabar II, and Daviau, Jabar & Batten on brief for appellee Michael Jabar d/b/a Mike's Roofing Co.

Michael J. Donlan, with whom Gene R. Libby and Verrill & Dana, LLP were on brief, for appellees Lisa A. Varano and Stephen M. Varano.

Before TORRUELLA, Chief Judge, NOONAN* and LYNCH, Circuit Judges.

TORRUELLA, Chief Judge.

Plaintiff-appellant Nautilus Insurance Company ("Nautilus") appeals from the district court's entry of summary judgment in favor of its insured, defendant-appellee Michael G. Jabar, d/b/a Mike's Roofing Company ("Jabar"). In the underlying action, Nautilus sought a declaratory judgment from the district court that it was not obligated to defend and/or indemnify Jabar in connection with a civil action filed against Jabar by Lisa and Stephen Varano ("the Varanos"). The district court granted summary judgment in favor of Jabar on the ground that the total pollution exclusion clause relied upon by Nautilus to deny coverage was ambiguous as a matter of law.

## BACKGROUND

On or about June 3, 1997, the Varanos commenced a civil action against Jabar in the United States District Court for the District of Maine alleging that in February and March of 1995 Lisa Varano was exposed to hazardous fumes discharged by roofing products used by Jabar to repair

* Of the Ninth Circuit, sitting by designation.

the roof at Lisa Varano's place of employment. The complaint alleges that due to the inhalation of these fumes, Lisa Varano now suffers from occupational asthma. In their complaint, the Varanos sought damages to compensate them for Lisa's personal injuries and for Stephen's loss of consortium. The complaint does not allege, nor has Nautilus ever suggested, that Jabar in any way misused the roofing products that are alleged to have caused Lisa Varano's injuries.

At the time of Lisa's exposure to the fumes, Jabar was insured under a commercial lines insurance policy issued by Nautilus. Jabar notified Nautilus of the suit against him, and Nautilus undertook his defense, under a reservation of rights.

Eventually, Nautilus concluded that it was not obligated to defend or indemnify Jabar in connection with the Varanos' claims due to the existence of a total pollution exclusion clause in Jabar's policy. This clause excludes coverage for:

(1) "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

. . . . .

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. . . .

On September 9, 1997, Nautilus instituted the underlying declaratory judgment action seeking a declaration that the claims asserted against Jabar fell unambiguously within the scope of the total pollution exclusion clause. On February 4, 1998, Nautilus moved for summary judgment, asking the district court to rule, as a matter of law, that Nautilus was not obligated to defend or indemnify Jabar in connection with the Varanos' claims.[1] Jabar opposed the motion, and at the same time requested that summary judgment be entered in his favor. By order dated April 29, 1998, the district court granted Nautilus's motion only as to any claims for indemnification for any award of punitive damages, and denied it as to any claims for indemnification for any award of compensatory damages. On October 1, 1998, the district court granted summary judgment in favor of Jabar "on the same basis and reasoning as the decision granting in part and denying in part [Nautilus's] motion." This appeal followed.

## DISCUSSION

We review the district court's grant of summary judgment *de novo*. See *Dominique v. Weld*, 73 F.3d 1156, 1158 (1st Cir.1996). The sole issue on appeal is whether the Varanos' claims fall unambiguously within the scope of the total pollution exclusion clause contained in the Nautilus policy. Nautilus argues that the district court erred in concluding that the Varanos' claims did not fall clearly within the scope of the exclusion clause. Nautilus contends that there clearly was a "discharge," "dispersal," "release" or "escape" of toluene disocyanate ("TDI"), a "pollutant," which caused "bodily injury" in the form of occupational asthma to Lisa Varano. Jabar, on the other hand, contends that the district court correctly concluded that the exclusion clause is ambiguous because the clause could reasonably be interpreted to exclude coverage only for environmental pollution, and not damages due to routine commercial hazards.

Under Maine law, whether the language of an insurance contract is ambiguous is a question of law for the court. See *Geyerhahn v. United States Fidelity and Guaranty Co.*, 724 A.2d 1258, 1261 (Me.1999). Insurance contract language is

---

1. This motion was referred to Magistrate Judge David M. Cohen. On March 19, 1998, the magistrate issued a recommended decision on Nautilus's motion, which the district court adopted by order dated April 29, 1998.

ambiguous "if it is reasonably susceptible of different interpretations." *Cambridge Mut. Fire Ins. Co. v. Vallee,* 687 A.2d 956, 957 (Me.1996). Maine courts have also found policy language ambiguous "if an ordinary person in the shoes of an insured would not understand that the policy did not cover claims such as those brought." *Peerless Ins. Co. v. Brennon,* 564 A.2d 383 (Me.1989). In applying these rules of construction, the court should view the policy language "from the perspective of an average person, untrained in the law or the insurance field, in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured." *Peerless Ins. Co. v. Wood,* 685 A.2d 1173, 1174 (Me.1996).

We agree with the district court that the total pollution exclusion clause is ambiguous as applied to the Varanos' claims because an ordinarily intelligent insured could reasonably interpret the pollution exclusion clause as applying only to environmental pollution. Put another way, we agree that an ordinary person in Jabar's shoes would not understand that the policy did not cover personal injury claims like those asserted by the Varanos.

First, the terms used in the exclusion clause, such as "discharge," "dispersal," "release" and "escape," are terms of art in environmental law and are generally used to refer to damage or injury resulting from environmental pollution. *See Atlantic Mut. Ins. Co. v. McFadden,* 413 Mass. 90, 595 N.E.2d 762, 764 (1992) ("[T]he terms used in the pollution exclusion 'discharge,' 'dispersal,' 'release,' and 'escape' are terms of art in environmental law which generally are used with reference to damage or injury caused by improper disposal or containment of hazardous waste."); *West American Ins. Co. v. Tufco Flooring East,*

*Inc.,* 104 N.C.App. 312, 409 S.E.2d 692, 699 (1991) (noting that the terms "discharge" and "release" are terms of art in environmental law). Given this language, it is entirely reasonable that an ordinarily intelligent insured would understand this provision to exclude coverage only for injuries caused by traditional environmental pollution. As the magistrate judge observed, an individual, like Jabar, engaged in a business not known to present the risk of environmental pollution "would not understand that the Nautilus policy exclude[d] coverage for injuries arising from the use of products associated with that business for the purpose for which those products [were] intended." Indeed, such an interpretation would render the Nautilus policy virtually meaningless to Jabar. *See Tufco,* 409 S.E.2d at 697 ("To allow West American to deny coverage for claims arising out of Tufco's central business activity would render the policy virtually useless to Tufco.").

■ We also find ambiguity in the exclusion's definition of "pollutant." The Nautilus policy defines "pollutant" as "any solid, liquid, gaseous, or thermal irritant or contaminant." As other courts have observed, the terms "irritant" and "contaminant" are virtually boundless, for "there is no substance or chemical in existence that would not irritate or damage some person or property." *Pipefitters Welfare Educational Fund v. Westchester Fire Ins. Co.,* 976 F.2d 1037, 1043 (7th Cir.1992) (quoting *Westchester Fire Ins. Co. v. City of Pittsburg,* 768 F.Supp. 1463, 1470 (D.Kan.1991)). A purely literal interpretation of this language, without regard to the fact pattern alleged in the underlying complaint, would surely stretch the intended meaning of the policy exclusion.[2] As one

---

**2.** The *Pipefitters* court clearly demonstrates the way in which the pollution exclusion clause might be extended far beyond its intended scope:

> To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who falls on

the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property

court has observed, "[w]ithout some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results." *See Pipefitters*, 976 F.2d at 1043. Accordingly, we agree with those courts which have restricted the exclusion's scope to only those hazards traditionally associated with environmental pollution. *See, e.g., Stoney Run Co. v. Prudential–LMI Commercial Ins. Co.*, 47 F.3d 34, 38 (2d Cir. 1995) (the pollution exclusion clause can be reasonably interpreted as applying only to environmental pollution); *Regional Bank of Colorado, N.A. v. St. Paul Fire & Marine Ins. Co.*, 35 F.3d 494, 498 (10th Cir. 1994) ("It seems far more reasonable that a policyholder would understand the exclusion as being limited to irritants and contaminants commonly thought of as [environmental] pollutants and not as applying to every possible irritant or contaminant imaginable."); *American Ins. Co. v. Koloms*, 177 Ill.2d 473, 227 Ill.Dec. 149, 687 N.E.2d 72, 82 (1997) ("we hold that the exclusion applies only to those injuries caused by traditional environmental pollution"); *McFadden*, 595 N.E.2d at 764 ("We conclude that an insured could reasonably have understood the provision at issue to exclude coverage for injury caused by certain forms of industrial pollution, but not for coverage for injury allegedly caused by the presence of lead materials in a private residence."); *Tufco*, 409 S.E.2d at 699 ("The historical purpose of the pollution exclusion limits the scope of the exclusion to environmental damage.").

■ For the foregoing reasons, we conclude that the total pollution exclusion clause in the Nautilus policy is ambiguous as a matter of law as applied to the Varanos' claims. *See Stoney Run*, 47 F.3d at 37 (noting that an exclusionary clause can be ambiguous in one context but not in another). It is a well-settled principle of Maine law that if the language of an insurance policy is ambiguous, it will be con-

strued "against the insurer in favor of coverage." *Geyerhahn v. United States Fidelity & Guaranty Co.*, 724 A.2d 1258, 1261 (Me.1999) (quoting *Genthner v. Progressive Cas. Ins. Co.*, 681 A.2d 479, 482 (Me.1996)). We therefore construe the total pollution exclusion clause against Nautilus, and in favor of coverage. *See id.*

## CONCLUSION

For the reasons stated above, we **affirm** the district court's grant of summary judgment in favor of defendant-appellee.

damage, one would not ordinarily characterize these events as pollution.

*Pipefitters*, 976 F.2d at 1043.