[713 NYS2d 615]

ROOFERS' JOINT TRAINING, APPRENTICE AND EDUCATIONAL COM-
MITTEE OF WESTERN NEW YORK, Respondent, v GENERAL
ACCIDENT INSURANCE COMPANY OF AMERICA, Appellant, et
al., Defendants.

Fourth Department, September 29, 2000

## APPEARANCES OF COUNSEL

*Traub Eglin Lieberman Straus,* Hawthorne (*Meryl R. Lieberman* of counsel), for appellant.

*Lipsitz, Green, Fahringer Roll,* Buffalo (*John Albert Collins* of counsel), for respondent.

## OPINION OF THE COURT

WISNER, J.

Plaintiff commenced this action seeking a declaration of rights under a policy of commercial general liability insurance with respect to an action filed by George Rickard (Rickard) seeking damages for injuries resulting from the exposure to toxic fumes during a construction safety course conducted by plaintiff. The fumes were released when a roofing membrane was applied with a hot air gun during a classroom demonstration. Defendant PG Insurance Company of New York (PG), incorrectly sued as General Accident Insurance Company of America, disclaimed coverage based on the total pollution exclusion endorsement of the policy. PG appeals from that part of a judgment granting plaintiff's motion for summary judgment declaring that PG must defend plaintiff in Rickard's action. Because the endorsement does not clearly and unambiguously apply to Rickard's claim, the judgment should be affirmed.

The total pollution exclusion endorsement at issue excludes coverage for a " '[b]odily injury' * * * which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." Under that endorsement, a "pollutant" is "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." PG contends that the endorsement is applicable because Rickard was allegedly injured by the "discharge, dispersal * * * release or escape" of "fumes." Plaintiff contends that the endorsement is ambiguous with respect to whether it is applicable to the facts of this case, and thus there is coverage.

Insurance policies in New York are liberally construed in favor of the insured (*see, Miller v Continental Ins. Co.,* 40 NY2d 675, 678). Ambiguities are "to be construed against the insurer, particularly when found in an exclusionary clause" (*Ace Wire & Cable Co. v Aetna Cas. & Sur. Co.,* 60 NY2d 390, 398). "[W]henever an insurer wishes to exclude certain coverage

from its policy obligations, it must do so 'in clear and unmistakable' language. * * * Any such exclusions or exceptions from policy coverage * * * are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction" (*Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 311). The insurer bears "the heavy burden of showing that the exclusion applies in the particular case and is subject to no other reasonable interpretation" (*Continental Cas. Co. v Rapid-American Corp.*, 80 NY2d 640, 654).

Measured against that standard, we conclude that the total pollution exclusion endorsement in the policy is ambiguous as applied to Rickard's claim. An ordinary insured in plaintiff's shoes would not understand that the policy does not cover a claim for bodily injuries such as those sustained by Rickard (*see, Nautilus Ins. Co. v Jabar*, 188 F3d 27, 30).

First, an average insured could reasonably interpret that endorsement as applying to environmental pollution only. The purpose of the pollution exclusion historically has been to exclude coverage for environmental pollution (*see, Continental Cas. Co. v Rapid-American Corp., supra*, at 654). Here, "[t]he terms used in the exclusion * * *—such as 'discharge' and 'dispersal'—are terms of art in environmental law used with reference to damage or injury caused by disposal or containment of hazardous waste" (*Continental Cas. Co. v Rapid-American Corp., supra*, at 654). Given the history of the pollution exclusion and the terms used therein, it is entirely reasonable that an ordinary insured would conclude that the endorsement is applicable only to bodily injuries caused by traditional environmental pollution and not to bodily injuries arising from the use of a product for its intended purpose (*see, Nautilus Ins. Co. v Jabar, supra*, at 30).

Second, for the exclusion to apply there must be a "discharge, dispersal * * * release or escape of pollutants." The fumes that injured Rickard were part of the normal roofing process and confined to the area where the demonstration was conducted. Rickard was in the immediate vicinity when he inhaled them. "It strains the plain meaning, and obvious intent, of the language to suggest that these fumes * * * had somehow been 'discharged, dispersed, released or escaped' " (*Lumbermens Mut. Cas. Co. v S-W Indus.*, 39 F3d 1324, 1336; *see, Meridian Mut. Ins. Co. v Kellman*, 197 F3d 1178, 1184; *see also, Vigilant Ins. Co. v V.I. Technologies*, 253 AD2d 401, 403, *lv dismissed* 93 NY2d 999).

Third, the term "pollutant" is ambiguous because there is virtually no substance or chemical in existence that is not an

"irritant or contaminant" (*see, Nautilus Ins. Co. v Jabar, supra,* at 30; *Pipefitters Welfare Educ. Fund v Westchester Fire Ins. Co.,* 976 F2d 1037, 1043). "Without some limiting principle, the pollution exclusion clause would extend far beyond its intended scope, and lead to some absurd results. To take but two simple examples, reading the clause broadly would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano, and for bodily injury caused by an allergic reaction to chlorine in a public pool. Although Drano and chlorine are both irritants or contaminants that cause, under certain conditions, bodily injury or property damage, one would not ordinarily characterize these events as pollution" (*Pipefitters Welfare Educ. Fund v Westchester Fire Ins. Co., supra,* at 1043; *see, Nautilus Ins. Co. v Jabar, supra,* at 30-31).

Admittedly, State and Federal courts are split on this issue (*see, Meridian Mut. Ins. Co. v Kellman, supra,* at 1181-1183). The First Circuit's decision in *Nautilus Ins. Co. v Jabar* (*supra*) on similar facts, however, is persuasive, as is the decision of the Sixth Circuit in *Meridian Mut. Ins. Co. v Kellman* (*supra*), where the injured employee was overcome by fumes used to seal a floor. Furthermore, the Second Circuit has held that this type of endorsement "applies only to environmental pollution, and not to all contact with substances that can be classified as pollutants" (*Stoney Run Co. v Prudential-LMI Commercial Ins. Co.,* 47 F3d 34, 38).

Accordingly, we conclude that the judgment should be affirmed.

GREEN, J. P., PINE, KEHOE and BALIO, JJ., concur.

Judgment unanimously affirmed, with costs.