January 27, 2023

**Supreme Court**

No. 2020-170-Appeal.
(PC 15-4811)

Regan Heating and Air Conditioning, :
Inc.

v. :

Arbella Protection Insurance Company, :
Inc., et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Regan Heating and Air Conditioning,  :
                Inc.

                v.                    :

Arbella Protection Insurance Company,  :
                Inc., et al.

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

# O P I N I O N

**Chief Justice Suttell, for the Court.**  The plaintiff, Regan Heating and Air Conditioning, Inc., appeals from a Superior Court judgment in favor of the defendant, Arbella Protection Insurance Company, Inc., following the denial of its motion for summary judgment and the grant of the defendant's motion for summary judgment.  On appeal, the plaintiff contends that the hearing justice committed multiple errors warranting reversal of the judgment.  Accordingly, the plaintiff asks this Court to vacate the hearing justice's entry of summary judgment in favor of the defendant and remand the matter to the Superior Court for entry of summary judgment in favor of the plaintiff on several counts and for further proceedings.  For the reasons set forth herein, we vacate the judgment of the Superior Court.

# I

# Facts and Travel

We glean the underlying facts of this case from plaintiff's complaint, the submissions of the parties, and the transcript.

The plaintiff is a company that sells and services residential heating and air-conditioning systems. The plaintiff is a long-standing customer of Christopher & Regan Insurance, Inc. (C&R),[1] an independent insurance agency with whom plaintiff consulted prior to purchasing insurance to protect it from risks associated with its business. Based on the information provided by C&R, plaintiff purchased two policies from defendant; the one relevant to this matter is Arbella Commercial Package policy number 8500026770 (the policy). The policy provided coverage to plaintiff from December 1, 2014, to December 1, 2015.

On or about May 12, 2015, plaintiff was in the process of removing an older heating system and installing a new heating system for non-party Robert O'Donnell at O'Donnell's home in Glocester, Rhode Island (the property). That evening, O'Donnell discovered 170 gallons of home heating oil in his basement; his complaint alleged that the oil leak resulted in property damage. O'Donnell filed suit

---

[1] C&R was also named as a defendant in the complaint; however, it is not a party to this appeal. We additionally note that plaintiff and C&R are of no relation, despite sharing a similar name.

against plaintiff alleging negligence and demanding remediation from the property damage.

The plaintiff thereafter demanded that defendant defend and indemnify plaintiff against O'Donnell's claim. In a letter dated June 11, 2015, counsel for defendant notified plaintiff that O'Donnell's claim was not covered under the policy. The letter stated that the loss was "not a covered occurrence" pursuant to the total endorsement because, according to defendant, it was "clear under Rhode Island law that 'oil' is a pollutant" defined in the policy and, therefore, the total endorsement excluded coverage.

The relevant policy provisions are as follows. First, contained in the policy is the definition of "pollutants." Under the policy, "'Pollutants' mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

The policy also includes a pollution exclusion. That section is "modifie[d]" by and, in effect, replaced by the "Total Pollution Exclusion Endorsement" (the total endorsement):

"This insurance does not apply to:

"f. Pollution

"(1) 'Bodily Injury' or 'property damage' which would not have occurred in whole or part but for the

actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time.

"(2) Any loss, cost or expense arising out of any:

"(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of 'pollutants'; or

"(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, 'pollutants'."

The first portion of the pollution exclusion—specifically, subparagraph (1)(a)—is also "modifie[d]" by the "Amendment of Pollution Exclusion – Exception for Building Heating Equipment" (the limited endorsement):

"This insurance does not apply to:

"POLLUTION

"(1) 'Bodily Injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

"(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

However, Subparagraph (a) does not apply to 'bodily injury' if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building."

The parties dispute the effect of each of these modifications on the policy.

The plaintiff filed its complaint against defendant and C&R on November 3, 2015, alleging breach of contract, common law and statutory bad faith, and requesting specific performance and a declaratory judgment against defendant.[2] The defendant filed motions for summary judgment in June 2016 and June 2018.[3]

The defendant argued that it was entitled to summary judgment on all counts "because the underlying loss is precluded from coverage by the unambiguous language of" the policy. Specifically, defendant submitted that the total endorsement precludes coverage because, defendant alleges, that endorsement states that the policy "does not apply to * * * 'property damage' which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, disbursal, seepage, migration, release or escape of '*pollutants*' at any time." (Emphasis added.) According to defendant, the home heating oil involved in the

---

[2] The plaintiff's bad-faith claims against defendant were severed from the other claims by order dated May 12, 2016.

[3] The defendant's two motions for summary judgment appear to be the same, however, the June 18, 2018 motion is missing the second page, which should contain the signature of counsel for defendant.

underlying incident was a pollutant because "[o]il, by its very nature, constitutes a liquid contaminant consistent with th[e] definition" of pollutant found in the policy.

In support of its motion, defendant highlighted the Legislature's definition of pollutant in G.L. 1956 chapter 12 of title 46[4] and the Supreme Judicial Court of Massachusetts's opinion in *McGregor v. Allamerica Insurance Company*, 868 N.E.2d 1225 (Mass. 2007), which held that "spilled oil is a classic example of pollution, and a reasonable insured would understand oil leaking into the ground to be a pollutant." *McGregor*, 868 N.E.2d at 1228.

The defendant additionally contended, in anticipation of plaintiff's response, that the limited endorsement did not create an ambiguity. According to defendant, while the total exclusion "seeks to preclude all liability claims arising out of the release of pollutants[,]" the limited endorsement "only provides a very narrow, limited exception to the pollution exclusion" that "only applies to claims involving property that is owned, occupied by or rented or loaned to an insured." The defendant submitted that, because plaintiff's only relationship to the property was that it performed work there, the limited endorsement does not apply. Accordingly, defendant maintained its position that the limited endorsement and the total

---

[4] General Laws 1956 § 46-12-1 relates to water pollution. It states, in relevant part: "'Pollutant' means any material or effluent which may alter the chemical, physical, biological, or radiological characteristics and/or integrity of water, including, but not limited to * * * other waste petroleum or petroleum products, including but not limited to oil." Section 46-12-1(15).

endorsement are consistent with one another. The defendant, however, suggested that, "even if the [hearing justice] were to fully accept [p]laintiff's contention that these two provisions are somehow inconsistent, where a contract contains two potentially inconsistent provisions, those provisions 'should of course be construed as consistent with one another if that is reasonably possible[.]'" *Rice Growers Association of California v. F. Carrera & Hno., Inc.*, 234 F.2d 843, 846 (1st Cir. 1956).

In February 2019, plaintiff filed an objection and a cross-motion for summary judgment, arguing that the policy was ambiguous. The plaintiff contended that the two endorsements are in direct conflict because the total endorsement and limited endorsement purport to replace the same language in the policy. The plaintiff argued that, under Rhode Island law, the conflict "must be resolved in favor of the insured." Therefore, plaintiff submitted, the total endorsement, "which under [defendant's] reading of the [p]olicy would purport to defeat coverage, must give way to the [l]imited [e]ndorsement, which does not defeat coverage."

The plaintiff additionally maintained that the definition of pollutants contained within the policy is ambiguous. The plaintiff cited to numerous state and federal courts, including the decision of the United States Court of Appeals for the First Circuit in *Nautilus Insurance Company v. Jabar*, 188 F.3d 27 (1st Cir. 1999), in support of this argument. The plaintiff noted that, in *Nautilus*, the First Circuit

found the same definition of pollutant at issue here to be ambiguous. *See Nautilus*, 188 F.3d at 30-31. The plaintiff further submitted that, in the context of its industry, home heating oil is not a pollutant. Furthermore, plaintiff contended that it reasonably expected the policy to provide coverage based on defendant's prior claim payouts.

The hearing justice heard arguments on those motions on July 31, 2019. She issued a bench decision on September 30, 2019, granting defendant's motion for summary judgment and denying plaintiff's motion for summary judgment, and on November 13, 2019, an order to the same effect entered. Judgment entered in favor of defendant and against plaintiff on February 17, 2020. The plaintiff filed a timely notice of appeal on February 24, 2020.

## II

### Standard of Review

"This Court will review the grant of a motion for summary judgment *de novo*, employing the same standards and rules used by the hearing justice." *Dulong v. Merrimack Mutual Fire Insurance Company*, 272 A.3d 120, 125 (R.I. 2022) (quoting *Bank of America, N.A. v. Fay*, 242 A.3d 38, 42 (R.I. 2020)). "We will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of

law." *Borgo v. Narragansett Electric Company*, 275 A.3d 567, 571 (R.I. 2022) (quoting *Shorr v. Harris, as Trustee of Trust of Anna H. Blankstein*, 248 A.3d 633, 636 (R.I. 2021)).

"Summary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." *Andrade v. Westlo Management LLC*, 276 A.3d 393, 399 (R.I. 2022) (quoting *Cruz v. DaimlerChrysler Motors Corp.*, 66 A.3d 446, 451 (R.I. 2013)). "A party opposing a motion for summary judgment 'bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions.'" *Id.* at 400 (quoting *Cancel v. City of Providence*, 187 A.3d 347, 350 (R.I. 2018)).

## III

## Discussion

On appeal, plaintiff takes issue with the hearing justice's construction and/or application of the legal standard for determining the existence of ambiguity in contracts for insurance and the applicable burden of proof. The plaintiff further submits that the hearing justice erred (1) in not finding that the total endorsement and limited endorsement conflicted, rendering the policy ambiguous; (2) in failing to find the policy's definition of pollution ambiguous; and (3) in failing to consider extrinsic evidence when she decided whether the policy was ambiguous.

- 9 -

We begin our analysis by addressing plaintiff's contention that the total endorsement and limited endorsement conflict. Specifically, plaintiff asserts that the two endorsements each modified the same language in the pollution exclusion but in different ways without referencing each other or providing guidance on which one to apply. Thus, plaintiff submits that the policy is reasonably susceptible of different constructions and must be construed in favor of plaintiff and in favor of coverage.

For its part, defendant asserts that the hearing justice correctly determined that the endorsements did not conflict with each other or create an ambiguity in the policy.

A contract is ambiguous when it is "reasonably susceptible of different constructions." *Bliss Mine Road Condominium Association v. Nationwide Property and Casualty Insurance Company*, 11 A.3d 1078, 1084 (R.I. 2010) (quoting *Westinghouse Broadcasting Co. v. Dial Media, Inc.*, 122 R.I. 571, 579, 410 A.2d 986, 991 (1980)). This Court, however, "adhere[s] to the principle that 'exclusions should be read *seriatim*, not cumulatively; there is *no* instance in which an exclusion can properly be regarded as inconsistent with another exclusion, since they bear no relationship with one another.'" *Cheaters, Inc. v. United National Insurance Co.*, 41 A.3d 637, 645 (R.I. 2012) (emphasis added) (brackets and deletions omitted) (quoting *Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979)). Furthermore, we have noted that:

- 10 -

> "The rule that exclusions are to be read *seriatim* evokes in our mind the image of a commuter train on its evening run. Just as some passengers depart at each stop and thereby subtract from the total number of passengers on the train, so each exclusion in a policy of insurance exists in and by itself without reference to any other." *Id.* at 645 n.11.

The plaintiff contends that the hearing justice erred by finding that "the total exclusion endorsement completely replaces the original base language" and that the limited endorsement "amends the exclusion set forth in the total exclusion endorsement." We agree; our principles make clear that the total endorsement and limited endorsement must be read independently of one another. *See Cheaters, Inc.*, 41 A.3d at 645.

Reading the endorsements *seriatim*, however, we conclude that they are not in conflict nor are they "reasonably susceptible of different constructions." *Bliss Mine Road Condominium Association*, 11 A.3d at 1084 (quoting *Westinghouse Broadcasting Co.*, 122 R.I. at 579, 410 A.2d at 991). The total endorsement in effect replaces the base language of the policy and provides that the policy does not afford liability coverage for claims "which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." The limited endorsement also modifies the base language of the policy to afford coverage for claims arising out of the release of pollutants in limited circumstances: "'bodily injury' if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that

building." Because there is no conflict between these two endorsements, as plaintiff suggests, we conclude that the total endorsement and the limited endorsement do not render the policy ambiguous.

We turn next to plaintiff's contention that the hearing justice erred by failing to find the policy's language and definition of pollutants ambiguous. The plaintiff suggests that the policy is reasonably susceptible of different constructions rendering it ambiguous and should have been construed strictly against defendant.

In response, defendant contends that the hearing justice correctly found that home heating oil, as applied here, constituted a pollutant under the policy. The defendant additionally submits that the hearing justice did not err in following the rationale set forth by the Supreme Judicial Court of Massachusetts in *McGregor*.

It is well established that "[a]n insurance policy is contractual in nature." *Nelson v. Allstate Insurance Company*, 228 A.3d 983, 985 (R.I. 2020) (quoting *Medical Malpractice Joint Underwriting Association of Rhode Island v. Charlesgate Nursing Center, L.P.*, 115 A.3d 998, 1002 (R.I. 2015)). When interpreting disputed terms, this Court "must do so in accordance with the rules of construction that govern contracts." *Id.* (quoting *Charlesgate Nursing Center*, 115 A.3d at 1002). Furthermore, this Court will "not depart from the literal language of the policy absent a finding that the policy is ambiguous." *Id.* (quoting *Charlesgate Nursing Center*, 115 A.3d at 1002).

To determine whether the terms of a policy are ambiguous, this Court gives "words their plain, ordinary, and usual meaning." *Nelson*, 228 A.3d at 985 (quoting *Charlesgate Nursing Center*, 115 A.3d at 1002). This Court has established that an ambiguous policy "will be strictly construed in favor of the insured and against the insurer"; however, the Court will also "refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present." *Id.* (quoting *Charlesgate Nursing Center*, 115 A.3d at 1003).

Additionally, this Court cannot consider the subjective intent of the parties in determining whether the contract is ambiguous. *See Bliss Mine Road Condominium Association*, 11 A.3d at 1083-84. As we have noted, *supra*, a contract is ambiguous when it is "reasonably susceptible of different constructions." *Id.* at 1084 (quoting *Westinghouse Broadcasting Co.*, 122 R.I. at 579, 410 A.2d at 991).

The policy does not cover "'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of '*pollutants*' at any time." (Emphasis added.) Under the policy, "'Pollutants' mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

Here, oil, and more specifically home heating oil, is not explicitly listed as a pollutant within the policy's definition. *See* 9 Steven Plitt et al., *Couch on Insurance*

- 13 -

3d § 127:8 (November 2022 update) (noting that pollution exclusion clauses typically apply when "the particular substance at issue is specifically listed as a pollutant"). At issue, therefore, is whether the home heating oil that spilled into O'Donnell's basement constitutes a "pollutant" under the policy definition, barring coverage for plaintiff.

We begin by reiterating the hearing justice's observation that there have been "decades of litigation on this very issue[.]" This issue, however, is one of first impression for this Court. In their respective filings, the parties cite a plethora of caselaw regarding ambiguity and the term "pollution" in insurance policies.

According to *Couch on Insurance*,

> "[t]he word 'pollutant' has received a great deal of scrutiny by courts. Arguments concerning whether particular substances are pollutants are governed by such factors as the nature of the substance, the typical usage of the substance, the quantity of the discharge, whether the substance was being used for its intended purpose when the injury took place, and whether the substance is one that would generally be viewed as a pollutant." 9 Steven Plitt et al., *Couch on Insurance* 3d § 127:8 (November 2022 update).

The treatise further notes that "the exclusion may not apply if the court finds the definition of pollutant in the policy exclusion to be ambiguous" or "beyond the reasonable expectations of the insured[,]" or "when a potential pollutant causes an injury based on a negligent act, not because of its nature as a pollutant." *Id.* Such an inquiry is "fact intensive." *Id.*

- 14 -

Because this Court has never specifically addressed this narrow issue, we look for guidance to other jurisdictions that have analyzed a similar—or the same—issue.

We begin by distinguishing the case at bar from the decision of the Supreme Judicial Court of Massachusetts in *McGregor*, which was relied upon by defendant and the hearing justice. The facts in *McGregor* are closely aligned with the facts in this case—the pollution exclusion also closely mirrors the language of plaintiff's policy—but the facts and reasoning in *McGregor* suggest that the case turned, at least in part, on the environmental impact and location of the oil leak. *McGregor*, 868 N.E.2d at 1226, 1228 ("[S]pilled oil is a classic example of pollution, and a reasonable insured would understand oil leaking into the *ground* to be a pollutant. The location of an oil spill at a residence, rather than an industrial or manufacturing site, does not automatically alter the classification of spilled oil as a pollutant.") (emphasis added).

In *McGregor*, years after the insured installed a furnace, there was a leak that allowed oil to drain into the ground below the house. *McGregor*, 868 N.E.2d at 1226. The homeowners were ordered by the Massachusetts Department of Environmental Protection to remediate "any environmental contamination caused by the oil[.]" *Id.* In that context, the Supreme Judicial Court of Massachusetts held that "[a] policyholder reading [the] policy could reasonably expect that *oil leaking into the*

*ground* constitutes a pollutant within the meaning of the policy." *Id.* at 1227 (emphasis added).

The home heating oil at issue here, according to O'Donnell's complaint, leaked into O'Donnell's basement and caused damage to his "home and personal property." We find the case at bar readily distinguishable from *McGregor*, where there was clearly an environmental impact from the oil leaking into the ground. *McGregor*, 868 N.E.2d at 1126-28.

At least one court has found home heating oil's status as a "pollutant" ambiguous and, therefore, construed the policy against the insurer. *See Unitrin Auto and Home Insurance Company v. Karp*, 481 F. Supp. 3d 514, 518, 525 (D. Md. 2020) (home heating oil leaked into the basement of a home). Additionally, it appears that in many cases where a court determined that oil was a pollutant under the relevant policy's definition, the facts involved traditional environmental pollution. *See, e.g.*, *Guilford Industries, Inc. v. Liberty Mutual Insurance Company*, 688 F. Supp. 792, 794-95 (D. Me. 1988) (damage caused when fuel oil flowed downstream after pipes for storage tanks of textile mill ruptured during river flood) *aff'd*, 879 F.2d 853 (1st Cir. 1989); *Heyman Associates No. 1 v. Insurance Company of State of Pennsylvania*, 653 A.2d 122, 133 (Conn. 1995) (spill of fuel oil from insured's property into harbor); *Grefer v. Travelers Insurance Company*, 919 So. 2d 758, 769-70 (La. Ct. App. 2005) (land contaminated by waste product from pipe

cleaning process); *West American Insurance Company v. Johns Brothers, Inc.*, 435 F. Supp. 2d 511, 514-17 (E.D. Va. 2006) (release of heating oil into the ground); and, *Nascimento v. Preferred Mutual Insurance Company*, 478 F. Supp. 2d 143, 148 (D. Mass. 2007) (heating oil leak from an underground storage tank contaminated soil).

The plaintiff urges this Court to adopt the conclusion set forth in *Nautilus*. The policy at issue in *Nautilus* contained a pollution exclusion clause and definition of pollutants identical to those at issue here. *See Nautilus*, 188 F.3d at 29. There, the First Circuit held that the pollution exclusion was ambiguous as applied to the underlying claims "because an ordinary intelligent insured could reasonably interpret the pollution exclusion clause as applying *only* to environmental pollution." *Id.* at 30 (emphasis added). The First Circuit found "ambiguity in the exclusion's definition of 'pollutant[,]'" which defined it as "any solid, liquid, gaseous, or thermal irritant or contaminant[,]" because "the terms 'irritant' and 'contaminant' are virtually boundless[.]" *Id.* The court noted, and we agree, that "[a] purely literal interpretation of this language, without regard to the fact pattern alleged in the underlying complaint, would surely stretch the intended meaning of the policy exclusion." *Id.*

The Indiana Supreme Court has taken, perhaps, the most extreme approach to this issue. *See State Automobile Mutual Insurance Company v. Flexdar, Inc. and*

- 17 -

*RTS Realty*, 964 N.E.2d 845, 851 (Ind. 2012) ("Applying basic contract principles, our decisions have consistently held that the insurer can (and should) specify what falls within its pollution exclusion. * * * Where an insurer's failure to be more specific renders its policy ambiguous, we construe the policy in favor of coverage."). While we do not adopt its approach today, we endorse the following commentary:

> "Jurisdictions applying a more 'situational' approach look to factual context and typically uphold the exclusion only in cases of 'traditional' environmental contamination. * * * While this framework may be more palatable than the literal view, it can still be problematic because the concept of what is a 'traditional' environmental contaminant may vary over time and has no inherent defining characteristics. This leaves courts in the awkward and inefficient position of making case-by-case determinations as to the application of the pollution exclusion." *Id.*

This Court has acknowledged that "'diversity of judicial thought as to the meaning of terms in an insurance contract is proof positive' of ambiguity." *Textron, Inc. v. Aetna Casualty and Surety Company*, 754 A.2d 742, 749 (R.I. 2000) (brackets omitted) (quoting *Zanfagna v. Providence Washington Insurance Co.*, 415 A.2d 1049, 1051 (R.I. 1980)). At a minimum, it is apparent that the policy is "reasonably susceptible of different constructions." *See Bliss Mine Road Condominium Association*, 11 A.3d at 1084 (quoting *Westinghouse Broadcasting Co.*, 122 R.I. at 579, 410 A.2d at 991). The policy must, therefore, be strictly construed in favor of plaintiff. *See Nelson*, 228 A.3d at 985.

Accordingly, we hold that the policy's definition of pollution is ambiguous as applied to O'Donnell's claims and that the hearing justice erred in granting the defendant's motion for summary judgment and in denying the plaintiff's motion for summary judgment.[5]

## IV

## Conclusion

For the reasons set forth herein, we vacate the judgment of the Superior Court and direct the Superior Court to enter judgment in favor of the plaintiff as to counts one, four, and five of its complaint. We remand the case to the Superior Court for further proceedings consistent with this opinion. The record may be returned to the Superior Court.

---

[5] Because we conclude that the policy's pollution definition is ambiguous, we need not reach the plaintiff's additional arguments.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Regan Heating and Air Conditioning, Inc. v. Arbella Protection Insurance Company, Inc., et al. |
| **Case Number** | No. 2020-170-Appeal. (PC 15-4811) |
| **Date Opinion Filed** | January 28, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa E. Darigan |
| **Attorney(s) on Appeal** | For Plaintiff: Scott F. Bielecki, Esq. |
| | For Defendant: John A. Caletri, Esq. |

SU-CMS-02A (revised November 2022)